organized under the laws of the Commonwealth of Pennsylvania, with a regular business address as above-captioned.

19. Defendant, Seth Williams, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, Philadelphia District Attorney's Office, as the District Attorney of the City of Philadelphia, with a regular business address as above-captioned.

20. Defendant, Erin O'Brien, at all times relevant and material hereto acted individually and in her official capacity as an agent, servant, worker and employee of Defendant, Philadelphia District Attorney's Office, as an Assistant District Attorney of the City of Philadelphia, with a regular business address as above-captioned.

21. Defendant, Rochelle Keyhan, at all times relevant and material hereto acted individually and in her official capacity as an agent, servant, worker and employee of Defendant, Philadelphia District Attorney's Office, as an Assistant District Attorney of the City of Philadelphia, with a regular business address as above-captioned.

22. Defendant, Tiffany Oldfield, at all times relevant and material hereto acted individually and in her official capacity as an agent, servant, worker and employee of Defendant, Philadelphia District Attorney's Office, as an Assistant District Attorney of the City of Philadelphia, with a regular business address as above-captioned.

23. Defendant, Jennifer Mitrick, at all times relevant and material hereto acted individually and in her official capacity as an agent, servant, worker and employee of Defendant, Philadelphia District Attorney's Office, as an Assistant District Attorney of the City of Philadelphia, with a regular business address as above-captioned.

24. At all relevant and material times, hereto, Defendants, and each of them, were acting by and through their agents, servants, workmen and employees, acting within the course and scope of their employment, duty and authority.

25. At all relevant and material times, hereto, all Defendants, were engaged in a regular course of business transactions within the County of Philadelphia, City, Commonwealth of Pennsylvania.

26. At all relevant and material times, hereto, Defendants City, Philadelphia Police Department, Richard Ross, Jr., Jeffrey Schmidt, Sean S. Matrascez, John E. Cole, Timothy Miller, Samuel Hudson, John Morton, Michael McGoldrick, Thomas Martinka, Anthony Mirabella, Phillip Nordo, Detective Bambrusky, Detective Williams, Philadelphia District Attorney's Office, Seth Williams, Erin O'Brien, Rochelle Keyhan, Tiffany Oldfield and Jennifer Mitrick acted under color of state law.

27. At all times material and relevant hereto, Defendants, The Philadelphia District Attorney's Office, DA Seth Williams, Richard Ross, Jr., ADA Erin O'Brien, ADA Rochelle Keyhan, ADA Tiffany Oldfield, ADA Jennifer Mitrick, and the individual police officers, police captain, lieutenants, sergeants, and police detectives were acting individually and in their official capacities, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the Commonwealth of Pennsylvania and/or the City of Philadelphia.

28. At all times material and relevant hereto, Defendants, The Philadelphia District Attorney's Office, DA Seth Williams, Richard Ross, Jr., ADA Erin O'Brien, ADA Rochelle Keyhan, ADA Tiffany Oldfield, ADA Jennifer Mitrick, and the individual police officers, captain, lieutenants, sergeant, and police detectives were acting within the course

and scope of their employment with the City of Philadelphia and the Philadelphia Police Department or District Attorney's Office.

29. At all relevant and material times, hereto, all Defendants were acting both individually and by and through their agents, servants, workers, co-workers, supervisors, and employees.

30. All of the acts alleged to have been done or not to have been done by Defendants were done or not done by said Defendants, their agents, servants, workers, co-workers, supervisors, and/or employees, all of whom were acting within the course and scope of their authority and/or employment with and on behalf of said Defendants.

31. At all relevant and material times hereto, the police and detective defendants acted personally and/or with the knowledge and acquiescence of each other and defendant, Commissioner Ross.

32. At all times relevant and material hereto, the ADA defendants acted personally and/or with the knowledge and acquiescence of each other and defendant, District Attorney Williams.

33. At all relevant and material times hereto each defendant personally acted in his or her capacity as described with particularity below.

34. At all relevant and material times, all individual defendants worked for, were employed by and acted on behalf of defendant, City of Philadelphia.

35. At all times relevant and material hereto, each Defendant, named herein was the agent, servant, worker, co-worker, supervisor and/or employee of each of the Defendants named herein.

A. FACTS GIVING RISE TO THE CAUSES OF ACTION

32. In or about November, 2010, the Defendant, police officers and detectives were looking for the "Kensington rapist-murderer".

33. On November 28, 2010, at approximately 11:00 p.m., the plaintiff was initially stopped by Defendants, Schmidt and Matraszek, as the plaintiff was walking on or about 2000 Wheatsheaf Lane, Philadelphia, Pennsylvania.

34. The plaintiff, who is 5'6", provided Defendants, Schmidt and Matraszek, with his identification, despite not being given a reason for the stop, and was then permitted to leave the area.

35. Earlier on November 28, 2010, at approximately 10:45 p.m., Rachel Patterson claimed that she was walking on the 1900 block of Buckius street when a male she had just met, allegedly the plaintiff, grabbed her, put a box cutter against her neck and dragged her into a vacant lot asking her to undo her pants at which point she screamed. Further, she stated that the offender had begun to choke her, but she managed to push him away enough to scream again and then the offender fled.

36. Defendants, Cole and Miller, responded to the radio call for Ms. Patterson around 10:47 p.m. on November 28, 2010, and took her initial report of the alleged events and, based upon information and belief, then relayed flash information over police radio.

37. After Defendants', Schmidt and Matrascez, stop of the plaintiff at approximately 11:00 p.m. on 2000 Wheatsheaf Lane, they claimed that they personally received flash information which met plaintiff's description for the attempted rape of Ms. Patterson.

38. Despite the fact that Defendants, Schmidt and Matrascez, had plaintiff's address and information from their earlier stop, at no point did they go to plaintiff's house and/or otherwise look for him immediately after the radio call. They personally chose to do this.

39. Later the defendant detectives tied in the 75-48A of the pedestrian stop of the plaintiff, who had already been let go and was not a suspect with regard to any purported crime.

40. On November 29, 2010 at approximately 11:30 a.m., Defendant, Detective Nordo of the Homicide Unit, came into contact with Rachel Patterson with regard to investigating two rapes/murder investigations and was given a brief description of a male, but photos shown to her from the imager did not provide a suspect pursuant to Defendant, Nordo.

41. Thereafter, Defendant, Nordo, personally showed Ms. Patterson the plaintiff's DMV photograph at which time she made a positive identification of the plaintiff as her assailant.

42. Initially all police and detective Defendants were investigating the plaintiff for being the "Kensington Rapist and Strangler" and his information was placed over the internet along with his photographs by at least one of the defendant police and/or detectives personally.

43. Defendant, Detective Nordo, showed a motor vehicle department photograph of the plaintiff (the only photograph documented to have been shown to her by this point) to the alleged attempted rape victim and thereafter defendant Detective Nordo wrote an Affidavit of Probable Cause was written out for homicide and/or attempted homicide which was approved by Defendant, ADA Jennifer Mitrick.

44. On November 29, 2010, the plaintiff was brought to the Homicide Unit solely for questioning by Defendants, Detectives Bambrusky and Williams from homicide, about the homicides that were unrelated to any allegations for which he was eventually charged.

45. It is believed, and therefore averred, that the plaintiff was actually arrested by Defendants, Cole and Miller who thereafter took him to homicide to see defendants, Detective Bambrusky and Williams although the allegations against the plaintiff under a name that did not belong to him - a/k/a Christopher Sandle.

46. At no point whatsoever was the plaintiff charged with actual homicide of the alleged victims of the "Kensington Rapist/Strangler". However, based upon the plaintiff's information and belief, it was based on those falsifications that an arrest warrant was obtained and approved by Defendant, ADA Mitrick, for the plaintiff.

47. At the time of these events, defendant, Seth Williams, was the head District Attorney who had assigned defendant, Jennifer Mitrick, and ADA, to act on his behalf in the charging unit.

48. Based upon information and belief, defendant, ADA Jennifer Mitrick failed to review any evidence that existed to date that showed and/or proved the allegation that the plaintiff was more likely than not the Kensington murderer.

49. Initially the plaintiff understood that he was going to be charged with three counts of murder, three counts of REAP, two counts of PICC, two counts of Sexual Assault, Rape, Aggravated Assault and False imprisonment. However, he was never arraigned on these charges but was subsequently charged with Attempted Murder, among other charges.

50. Thereafter, Ms. Patterson was transported and/or otherwise came into contact with the Special Victim's Unit where she was interviewed by Defendant, Detective McGoldrick.

51. Defendant, Detective McGoldrick, obtained a description of the alleged perpetrator as being a 35-year-old Puerto Rican male, 5'11', medium build, light skin and a goatee wearing dark blue jeans and a black and yellow jacket over a gray hoodie.

52. By this point, defendants, Detective Nordo, Bambrusky and Williams had already provided Ms. Patterson with plaintiff's description and particulars so that she would repeat it to other police and/or detective personnel and/or testify to say that the plaintiff was her perpetrator.

53. Based upon information and belief, since they knew that they had arrested the wrong person at some point between being taken into custody at homicide and needing a reason for keeping the plaintiff in custody, the Defendant Detectives then falsely charged plaintiff with attempted murder and attempted rape, among other charges, of Rachel Patterson and defendant, ADA Mitrick approved the charges without properly investigating and/or evaluating them beforehand.

54. During the course of the investigation of the identification of the person that came to be known as the "Kensington Strangler", the Defendant police and detectives made a number of arrests and false arrests, based upon information and belief pursuant to various news stories that were published.

55. The defendant police and detectives were acting pursuant to the directives of then Police Commissioner Ross.

56. The plaintiff, apparently was one of the persons falsely arrested as being the "Kensington Strangler", but one of the few, if not the only, that was thereafter arrested and kept in custody with false allegations.

57. The statement of Ms. Patterson and the description as given to Defendant, McGoldrick, was approved by Defendants, Lieutenant Anthony Mirabella, Jr. and Morton, for the arrest of the plaintiff in Ms. Patterson's case.

58. Sometime thereafter Defendants, McGoldrick, Mirabella and Morton, then approved Defendant, for the arrest of the attempted rape of Ms. Patterson only although he had been held as the Kensington Rapist-Murderer by the homicide Defendants initially.

59. It should be noted that at the time of his arrest the biographical information revealed that the plaintiff was 5'6" and 154 pounds whereas Rachael Patterson stated that she was accosted by a 35-year-old male that was 5'11" medium build, light skinned Hispanic male which clearly does not meet the plaintiff's description whatsoever.

60. All defendant, police and detectives, as well as defendant, Jennifer Mitrick, personally disregarded the differences in Ms. Patterson's described offender and those of the plaintiff.

61. All of the defendants acted personally as more particularly described above and herein below.

62. At the point that the plaintiff was arrested, he was in the process of obtaining worker's compensation benefits due to a work-related injury from on June 14, 2010, but because he was incarcerated on a detainer and could not make bail, he had to wait until the trial for the alleged attempted rape of Ms. Patterson to be completed, which was not done until September 30th, 2014, at which time the plaintiff was found not guilty of all charges after a jury trial.

63. The plaintiff was fingerprinted, photographed and charged with three murders as the "Kensington Strangler" on December 1, 2010 and then given the alias Christopher Sandle as if he was trying to avoid the law, but he was never actually arraigned on these charges.

64. At no point in time was the defendant actually prosecuted in court for "murder."

65. A subsequent line-up of the plaintiff at the prison with Ms. Patterson as the victim was negative for any identification of her alleged assailant including the plaintiff. See Exhibit "A" attached hereto and incorporated by reference.

66. Thereafter, the Defendant, district attorney's office, district attorney's and assistant district attorney's and prosecuting detective's purported that the plaintiff attempted to change his description physically so that he could not be identified in a line up.

67. During the course of discovery none of the ADA's nor the District Attorney, nor his office provided defense counsel with a photograph wherein they say that the identification of the plaintiff as being the alleged suspect for Rachel Patterson and/or the Kensington Strangler was made and/or how it could have been that he had physically changed his appearance.

68. During the course of the wrongful prosecution of the plaintiff, it was discovered that he indeed was not the "Kensington Strangler" who was arrested and charged by January of 2011, however, none of the Defendant, District Attorney's Office Seth Williams, nor any ADA, would turn over any of the initial discovery that led to the allegations and falsities against the plaintiff identifying him as the purported "Kensington Strangler" these included, but were not limited to, Defendant, ADA Keyhan, Erin O'Brien, Tiffany Oldfield, Jennifer Mitrick and Seth Williams himself at the respective times that they each worked on the file and/or knew and acquiesced in the work on the file by the other ADA defendants..

69. On or about January 17, 2011, a person named Antonio Rodriguez was taken into custody on an unrelated bench warrant and was thereafter believed to be the "Kensington Strangler".

70. On January 17, 2011, the plaintiff was still in custody, but nobody stopped the false allegations and/or false affidavit of arrest that had been done for him as being the "Kensington Strangler" from keeping him in prison and then being prosecuted.

71. Once the police confirmed the identity of the real "Kensington Strangler" via DNA testing, on or shortly after January 17, 2011, none of the Defendants in the instant matter withdrew the charges against the plaintiff, nor were the news services notified of the wrongful identity of the plaintiff as the Kensington Strangler.

72. During the course of the prosecution of the plaintiff as an alleged Defendant, in the matter of Ms. Patterson as the complaining witness, the plaintiff was represented by several criminal defense attorneys all of whom kept trying to obtain all discovery and particularly that discovery pertaining to the plaintiff's initial arrest in the homicide file.

73. According to the plaintiff, he did not even know that his charges had been changed until February 23, 2011 when his then attorney visited him while he was incarcerated and told him that his charges had been changed to attempted murder, aggravated assault, attempted rape, unlawful restraint, and others.

74. Because the plaintiff was on state parole and/or probation, the state parole board placed a detainer on him it is only on their notice of charges and hearing that the actual charge of murder etc. as opposed to "attempted" is listed. See Exhibit "B" attached hereto and incorporated by reference.

75. On May 24, 2011, the plaintiff's bail was lowered to ROR due to the very weak case against him, however, because of the state detainer, he remained incarcerated until after September 30, 2014, the date the jury found him not guilty the time of trial.

76. During the course of criminal motions on, November 4, 2013, Defendant, ADA Keyhan, admitted that the plaintiff was never arraigned on murder charges.

77. During the course of the plaintiff's criminal prosecution, all of the named ADA Defendants represented the Commonwealth; the City of Philadelphia; Defendant, Philadelphia District Attorney's Office; and defendant District Attorney Seth Williams, at various stages of the criminal proceedings.

78. Not one of the ADA Defendants ever attempted to right the wrongs perpetrated against the plaintiff by any and/or all of the other Defendants and the plaintiff had to sit in prison for four years until his exoneration after a jury trial and his state detainer was lifted.

79. In short, all of the Defendants conspired together to wrongfully convict and/or attempt to wrongfully convict the plaintiff because they had made a false arrest and still maliciously prosecuted a case against him in an effort to cover up their errors.

80. Plaintiff, Noel Quintana a/k/a Christopher Sandle's, criminal defense counsel provided the Defendants with ample evidence exonerating the plaintiff and implicating other individuals in the alleged crimes charged and requested that Defendants investigate and prosecute the actual perpetrators of the alleged the alleged crimes.

81. When it appeared that all the credible evidence showed that plaintiff was truthful and innocent, defendant Ross; defendant Police Officers; the Defendant detectives; and their Defendant, supervisors tabled the "investigations" pending what all Defendants herein hoped would be plaintiff's conviction.

82. Defendants, were responsible for supervising, starting and perpetuating the arrest of Plaintiff, Noel Quintana a/k/a Christopher Sandle, and the investigation into the allegations against him. Despite their knowledge that there was no credible evidence to

support plaintiff's arrest and ample evidence exonerating him, they took no steps to investigate the true perpetrator(s) of the alleged crimes, and they acquiesced and/or participated in the unlawful detention and malicious and unlawful prosecution of Plaintiff, Noel Quintana a/k/a Christopher Sandle.

83. There was ample evidence exonerating Plaintiff, Noel Quintana a/k/a Christopher Sandle, from any involvement in the alleged attempted rape, etc.

84. There was ample evidence implicating individuals other than Plaintiff, Noel Quintana a/k/a Christopher Sandle, in the alleged attempted rape if Rachael Patterson.

85. Plaintiff, Noel Quintana a/k/a Christopher Sandle was prosecuted by Defendants, City of Philadelphia, Philadelphia District Attorney's Office, Seth Williams, ADA Erin O'Brien, ADA Rochelle Keyhan, ADA Tiffany Oldfield, ADA Jennifer Mitrick, the Philadelphia Police Department, Police Commissioner Richard Ross, and the individual police officers, police captain, police lieutenants and sergeants, and police detectives.

86. Defendants, P/O Jeffrey Schmidt, P/O Sean Matrascez, P/O John Cole, P/O Timothy Miller, P/O Samuel Hudson, P/O Sergeant John Morton, Detective Michael McGoldrick, Detective Thomas Martinka, Lieutenant Anthony Mirdedla, Jr., Detective Phillip Nordo, Homicide Detective entered into a conspiracy with each other on November 29, 2010 and continuing for the purpose of impeding the true course of justice in the Commonwealth of Pennsylvania with intent to deny Plaintiff, Noel Quintana a/k/a Christopher Sandle, the equal protection of the laws and with the intent to injure him for lawfully enforcing or attempting to enforce his right to equal protection under the law in that said Defendants, pursuant to the conspiracy, caused Plaintiff, Noel Quintana a/k/a Christopher Sandle, to be unlawfully arrested, falsely imprisoned, maliciously prosecuted

and caused his incarceration and continuation until his release of malicious prosecution against Plaintiff, Noel Quintana a/k/a Christopher Sandle.

87. On November 29, 2010, or shortly thereafter, at the time they were assigned to their respective duties for investigating and or supervising the investigation of the alleged crimes committed by the plaintiff, Defendants, ADA Erin O'Brien, ADA Rochelle Keyhan, ADA Tiffany Oldfield, ADA Jennifer Mitrick, joined in the conspiracy described above in paragraph 24 and/or entered into a separate conspiracy for the purpose of impeding the true course of justice in the Commonwealth of Pennsylvania with intent to deny Plaintiff, Noel Quintana a/k/a Christopher Sandle, the equal protection of the laws and with the intent to injure him for lawfully enforcing or attempting to enforce his right to equal protection under the law in that said Defendants, pursuant to the conspiracy or conspiracies, caused Plaintiff, Noel Quintana a/k/a Christopher Sandle, to be falsely imprisoned and caused the institution and continuation until his release from prison of malicious prosecution against plaintiff.

88. Throughout the course of his incarceration, upon receiving the evidence from plaintiff's respective criminal defense counsel, all Defendants, ADA Erin O'Brien, ADA Rochelle Keyhan, ADA Tiffany Oldfield, ADA Jennifer Mitrick joined in the conspiracy and/or conspiracies described above in all paragraphs and/or entered into a separate conspiracy for the purpose of impeding the true course of justice in the Commonwealth of Pennsylvania with intent to deny Plaintiff, Noel Quintana a/k/a Christopher Sandle, the equal protection of the laws and with the intent to injure him for lawfully enforcing or attempting to enforce his right to equal protection under the law in that said Defendants, pursuant to the conspiracy or conspiracies, caused Plaintiff, Noel Quintana a/k/a

Christopher Sandle, to be falsely imprisoned and caused the incarceration and continuation until his release of the malicious prosecution against Plaintiff, Noel Quintana a/k/a Christopher Sandle.

89. The Defendants intentionally, willfully, wantonly, recklessly and without regard for the evidence failed and refused to investigate and/or prosecute anyone other than plaintiff, thereby depriving plaintiff of life, liberty, the pursuit of happiness, equal protection under the laws, due process, and other rights under the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.

90. The Defendants intentionally, willfully, wantonly, recklessly and without regard for the evidence falsely arrested, falsely imprisoned, and maliciously prosecuted Plaintiff, Noel Quintana a/k/a Christopher Sandle, thereby depriving plaintiff of life, liberty, the pursuit of happiness, equal protection under the laws, due process, and other rights under the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.

91. The Defendants falsely arrested, falsely imprisoned, and maliciously prosecuted Plaintiff, Noel Quintana a/k/a Christopher Sandle, with the motive of discriminating against him on the basis of race and ethnicity.

92. Defendants, City of Philadelphia, Philadelphia District Attorney's Office, Seth Williams, ADA Erin O'Brien, ADA Rochelle Keyhan, ADA Tiffany Oldfield, ADA Jennifer Mitrick and Rachael Patterson, conspired with the other individual Defendants herein to present testimony at plaintiff's preliminary hearing and trial about plaintiff, matching the description of the perpetrator whom they identified as plaintiff which they knew to be false.

93. The individual Defendants knew that the "identification" of Plaintiff, Noel Quintana a/k/a Christopher Sandle, by Rachel Patterson were incorrect or false but persisted in holding the identification up as true and correct at the preliminary hearing and trial of plaintiff for the crimes alleged.

94. The plaintiff was found not guilty on all charges after a jury trial.

95. At all times material and relevant hereto, the Defendants were engaged in a joint venture, assisting and supporting one another in performing the various actions and inactions described above and lending the authority of their respective offices to one another during the said events, actions, and inactions.

96. Although the plaintiff was arrested on November 29, 2010, the actions put in motion that day due to the faulty, negligent, reckless, careless and intentionally false allegations, arrest and prosecution of the plaintiff by all defendants, all causes of actions continued until such time as the jury exonerated the plaintiff and the Parole Board released him from custody. Furthermore, each day that the plaintiff was wrongfully, unconstitutionally, improperly and/or knowingly in custody awaiting his trial and exoneration, each cause of action against each defendant was not actionable and/or nor did it accrue until the plaintiff was proven Not Guilty at trial.

97. Each cause of action set in motion on November 29, 2010, was of an ongoing and continuing nature which did not accrue, nor was it ripe for action, until such time as the plaintiff was adjudicated Not Guilty.

98. As a direct and proximate result of the said negligent, reckless, careless, intentional and or grossly negligent wrongful acts and failures to act of all Defendants, Plaintiff, Noel Quintana a/k/a Christopher Sandle, suffered the following injuries and damages: