IN THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOEL QUINTANA a/k/a | : | CIVIL ACTION |
| CHRISTOPHER SANDLE | : | |
| 1718 S. 21st | : | NO.  17-CV-00996 |
| Philadelphia, PA 19145 | : | |
| | : | |
| PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| 1515 Arch Street | : | |
| 14th Floor | : | |
| Philadelphia, PA  19102 | : | |
| | : | |
| and | : | |
| | : | |
| PHILADELPHIA POLICE DEPARMENT | : | |
| c/o City of Philadelphia Law Department | : | |
| 1515 Arch Street | : | |
| 14th Floor | : | |
| Philadelphia, PA  19102 | : | |
| | : | |
| and | : | |
| | : | |
| RICHARD ROSS, JR., Individually | : | |
| and in his official capacity as Commissioner | : | |
| of the Philadelphia Police Department | : | |
| c/o City of Philadelphia Law Department | : | |
| 1515 Arch Street | : | |
| 14th Floor | : | |
| Philadelphia, PA  19102 | : | |
| | : | |
| and | : | |
| | : | |
| POLICE OFFICER JEFFREY SCHMIDT, | : | |
| Badge No. 4466 | : | |
| Individually and in his official capacity as a | : | |
| Police Officer of the City of Philadelphia | : | |
| 24th Police District | : | |
| 3901 Whitaker Avenue | : | |
| Philadelphia, PA  19124 | : | |
| | : | |

and                                                :
                                                   :
POLICE OFFICER SEAN S. MATRASCEZ,                  :
Badge No. 9893                                     :
Individually and in his official capacity as a    :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                              :
Philadelphia, PA  19124                            :
                                                   :
and                                                :
                                                   :
POLICE OFFICER JOHN E. COLE,                       :
Badge No. 4037                                     :
Individually and in his official capacity as a    :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                               :
Philadelphia, PA  19124                            :
                                                   :
and                                                :
                                                   :
POLICE OFFICER TIMOTHY M. MILLER,                  :
Badge No. 2357                                     :
Individually and in his official capacity as a    :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                               :
Philadelphia, PA  19124                            :
                                                   :
and                                                :
                                                   :
POLICE OFFICER SAMUEL H. HUDSON,                   :
Badge No.                                          :
Individually and in his official capacity as a    :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                               :
Philadelphia, PA  19124                            :
                                                   :
and                                                :
                                                   :
POLICE SERGEANT JOHN MORTON,                       :
Badge No. 561                                      :
Individually and in his official capacity as a    :
Police Officer of the City of Philadelphia        :
24th Police District                              :

3901 Whitaker Avenue                          :
Philadelphia, PA  19124                       :
                                              :
and                                           :
                                              :
DETECTIVE MICHAEL MCGOLDRICK :
Badge No. 8011                                :
c/o City of Philadelphia Law Department       :
1515 Arch Street                              :
14th Floor                                    :
Philadelphia, PA  19102                       :
                                              :
and                                           :
                                              :
DETECTIVE THOMAS MARTINKA            :
Badge No. 921                                 :
c/o City of Philadelphia Law Department       :
1515 Arch Street                              :
14th Floor                                    :
Philadelphia, PA  19102                       :
                                              :
and                                           :
                                              :
LIEUTENANT ANTHONY MIRDEDLA,   :
Badge No. 147                                 :
c/o City of Philadelphia Law Department       :
1515 Arch Street                              :
14th Floor                                    :
Philadelphia, PA  19102                       :
                                              :
and                                           :
                                              :
DETECTIVE PHILLIP NARDO                  :
Badge No. 936                                 :
c/o City of Philadelphia Law Department       :
1515 Arch Street                              :
14th Floor                                    :
Philadelphia, PA  19102                       :
                                              :
and                                           :
                                              :
HOMICIDE DETECTIVE BAMBRUSKEY :
c/o City of Philadelphia Law Department       :
1515 Arch Street                              :
14th Floor                                    :
Philadelphia, PA  19102                       :

and                                              :
                                                 :
                                                 :
HOMICIDE DETECTIVE WILLIAMS                       :
c/o City of Philadelphia Law Department          :
1515 Arch Street                                 :
14th Floor                                        :
Philadelphia, PA  19102                          :
                                                 :
and                                              :
                                                 :
PHILADELPHIA DISTRICT                             :
ATTORNEY'S OFFICE                                 :
Three South Penn Square                          :
Philadelphia, PA  19107-3499                     :
                                                 :
                                                 :
          DEFENDANTS                             :
                                                 :

---

## NOTICE

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Philadelphia Bar Association
1101 Market Street
11th Floor
Philadelphia, PA 19107
(215) 238-6300

ADVISO

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plaza al partir de la fe de la demanda y la notificacion.  Hace falta asentar una comparesencia escrita o en persona

o con un abogado y entregar a la corte en forma escrita sus defensas o sus objecciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENDUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Philadelphia Bar Association
1101 Market Street
11th Floor
Philadelphia, PA 19107
(215) 238-6300

IN THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOEL QUINTANA a/k/a | : | CIVIL ACTION |
| CHRISTOPHER SANDLE | : | |
| 1718 S. 21st | : | NO.  17-CV-00996 |
| Philadelphia, PA 19145 | : | |
| | : | |
| PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| 1515 Arch Street | : | |
| 14th Floor | : | |
| Philadelphia, PA  19102 | : | |
| | : | |
| and | : | |
| | : | |
| PHILADELPHIA POLICE DEPARMENT | : | |
| c/o City of Philadelphia Law Department | : | |
| 1515 Arch Street | : | |
| 14th Floor | : | |
| Philadelphia, PA  19102 | : | |
| | : | |
| and | : | |
| | : | |
| RICHARD ROSS, JR., Individually | : | |
| and in his official capacity as Commissioner | : | |
| of the Philadelphia Police Department | : | |
| c/o City of Philadelphia Law Department | : | |
| 1515 Arch Street | : | |
| 14th Floor | : | |
| Philadelphia, PA  19102 | : | |
| | : | |
| and | : | |
| | : | |
| POLICE OFFICER JEFFREY SCHMIDT, | : | |
| Badge No. 4466 | : | |
| Individually and in his official capacity as a | : | |
| Police Officer of the City of Philadelphia | : | |
| 24th Police District | : | |
| 3901 Whitaker Avenue | : | |
| Philadelphia, PA  19124 | : | |
| | : | |

and                                              :
                                                 :
POLICE OFFICER SEAN S. MATRASCEZ,                 :
Badge No. 9893                                    :
Individually and in his official capacity as a   :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                              :
Philadelphia, PA  19124                           :
                                                 :
and                                              :
                                                 :
POLICE OFFICER JOHN E. COLE,                      :
Badge No. 4037                                    :
Individually and in his official capacity as a   :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                              :
Philadelphia, PA  19124                           :
                                                 :
and                                              :
                                                 :
POLICE OFFICER TIMOTHY M. MILLER,                 :
Badge No. 2357                                    :
Individually and in his official capacity as a   :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                              :
Philadelphia, PA  19124                           :
                                                 :
and                                              :
                                                 :
POLICE OFFICER SAMUEL H. HUDSON,                  :
Badge No.                                         :
Individually and in his official capacity as a   :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                              :
Philadelphia, PA  19124                           :
                                                 :
and                                              :
                                                 :
POLICE SERGEANT JOHN MORTON,                      :
Badge No. 561                                     :
Individually and in his official capacity as a   :
Police Officer of the City of Philadelphia        :
24th Police District                              :

3901 Whitaker Avenue                        :
Philadelphia, PA  19124                     :
                                            :
and                                         :
                                            :
DETECTIVE MICHAEL MCGOLDRICK                :
Badge No. 8011                              :
c/o City of Philadelphia Law Department     :
1515 Arch Street                            :
14th Floor                                  :
Philadelphia, PA  19102                     :
                                            :
and                                         :
                                            :
DETECTIVE THOMAS MARTINKA                   :
Badge No. 921                               :
c/o City of Philadelphia Law Department     :
1515 Arch Street                            :
14th Floor                                  :
Philadelphia, PA  19102                     :
                                            :
and                                         :
                                            :
LIEUTENANT ANTHONY MIRDEDLA,                :
Badge No. 147                               :
c/o City of Philadelphia Law Department     :
1515 Arch Street                            :
14th Floor                                  :
Philadelphia, PA  19102                     :
                                            :
and                                         :
                                            :
DETECTIVE PHILLIP NARDO                     :
Badge No. 936                               :
c/o City of Philadelphia Law Department     :
1515 Arch Street                            :
14th Floor                                  :
Philadelphia, PA  19102                     :
                                            :
and                                         :
                                            :
HOMICIDE DETECTIVE BAMBRUSKEY               :
c/o City of Philadelphia Law Department     :
1515 Arch Street                            :
14th Floor                                  :
Philadelphia, PA  19102                     :

and                                                    :
                                                       :
HOMICIDE DETECTIVE WILLIAMS                            :
c/o City of Philadelphia Law Department               :
1515 Arch Street                                       :
14th Floor                                             :
Philadelphia, PA  19102                               :
                                                       :
and                                                    :
                                                       :
PHILADELPHIA DISTRICT                                  :
ATTORNEY'S OFFICE                                      :
Three South Penn Square                                :
Philadelphia, PA  19107-3499                           :
                                                       :
                                                       :
          DEFENDANTS                                   :
                                                       :

---

## NOTICE

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Philadelphia Bar Association
1101 Market Street
11th Floor
Philadelphia, PA 19107
(215) 238-6300

ADVISO

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plaza al partir de la fe de la demanda y la notificacion.  Hace falta asentar una comparesencia escrita o en persona

o con un abogado y entregar a la corte en forma escrita sus defensas o sus objecciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENDUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Philadelphia Bar Association
1101 Market Street
11th Floor
Philadelphia, PA 19107
(215) 238-6300

IN THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOEL QUINTANA a/k/a<br>CHRISTOPHER SANDLE<br>1718 S. 21st<br>Philadelphia, PA 19145 | CIVIL ACTION<br><br>NO.  17-CV-00996 |
| PLAINTIFF | |
| v. | |
| CITY OF PHILADELPHIA<br>1515 Arch Street<br>14th Floor<br>Philadelphia, PA  19102 | |
| and | |
| PHILADELPHIA POLICE DEPARMENT<br>c/o City of Philadelphia Law Department<br>1515 Arch Street<br>14th Floor<br>Philadelphia, PA  19102 | |
| and | |
| RICHARD ROSS, JR., Individually<br>and in his official capacity as Commissioner<br>of the Philadelphia Police Department<br>c/o City of Philadelphia Law Department<br>1515 Arch Street<br>14th Floor<br>Philadelphia, PA  19102 | |
| and | |
| POLICE OFFICER JEFFREY SCHMIDT,<br>Badge No. 4466<br>Individually and in his official capacity as a<br>Police Officer of the City of Philadelphia<br>24th Police District<br>3901 Whitaker Avenue<br>Philadelphia, PA  19124 | |

and                                               :
                                                  :
POLICE OFFICER SEAN S. MATRASCEZ,                 :
Badge No. 9893                                    :
Individually and in his official capacity as a    :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                              :
Philadelphia, PA  19124                           :
                                                  :
and                                               :
                                                  :
POLICE OFFICER JOHN E. COLE,                      :
Badge No. 4037                                    :
Individually and in his official capacity as a    :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                              :
Philadelphia, PA  19124                           :
                                                  :
and                                               :
                                                  :
POLICE OFFICER TIMOTHY M. MILLER,                 :
Badge No. 2357                                    :
Individually and in his official capacity as a    :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                              :
Philadelphia, PA  19124                           :
                                                  :
and                                               :
                                                  :
POLICE OFFICER SAMUEL H. HUDSON,                  :
Badge No.                                         :
Individually and in his official capacity as a    :
Police Officer of the City of Philadelphia        :
24th Police District                              :
3901 Whitaker Avenue                              :
Philadelphia, PA  19124                           :
                                                  :
and                                               :
                                                  :
POLICE SERGEANT JOHN MORTON,                      :
Badge No. 561                                     :
Individually and in his official capacity as a    :
Police Officer of the City of Philadelphia        :
24th Police District                              :

3901 Whitaker Avenue                    :
Philadelphia, PA  19124                 :
                                        :
and                                     :
                                        :
DETECTIVE MICHAEL MCGOLDRICK            :
Badge No. 8011                          :
c/o City of Philadelphia Law Department :
1515 Arch Street                        :
14th Floor                              :
Philadelphia, PA  19102                 :
                                        :
and                                     :
                                        :
DETECTIVE THOMAS MARTINKA               :
Badge No. 921                           :
c/o City of Philadelphia Law Department :
1515 Arch Street                        :
14th Floor                              :
Philadelphia, PA  19102                 :
                                        :
and                                     :
                                        :
LIEUTENANT ANTHONY MIRDEDLA,            :
Badge No. 147                           :
c/o City of Philadelphia Law Department :
1515 Arch Street                        :
14th Floor                              :
Philadelphia, PA  19102                 :
                                        :
and                                     :
                                        :
DETECTIVE PHILLIP NARDO                 :
Badge No. 936                           :
c/o City of Philadelphia Law Department :
1515 Arch Street                        :
14th Floor                              :
Philadelphia, PA  19102                 :
                                        :
and                                     :
                                        :
HOMICIDE DETECTIVE BAMBRUSKEY :
c/o City of Philadelphia Law Department :
1515 Arch Street                        :
14th Floor                              :
Philadelphia, PA  19102                 :

and                                          :
                                             :
                                             :
HOMICIDE DETECTIVE WILLIAMS                  :
c/o City of Philadelphia Law Department      :
1515 Arch Street                             :
14th Floor                                   :
Philadelphia, PA  19102                      :
                                             :
and                                          :
                                             :
PHILADELPHIA DISTRICT                        :
ATTORNEY'S OFFICE                            :
Three South Penn Square                      :
Philadelphia, PA  19107-3499                 :
                                             :
                                             :
        DEFENDANTS                           :
                                             :

---

## THIRD AMENDED COMPLAINT - CIVIL ACTION

1.      Plaintiff, Noel Quintana a/k/a Christopher Sandle, is an adult individual residing at

the above-captioned address. *

2.      Defendant, the City of Philadelphia (hereinafter "City") at all relevant and material

times hereto was a political subdivision and municipal corporation duly existing and

organized under the laws of the Commonwealth of Pennsylvania, with a regular business

address as above-captioned.

3.      The Philadelphia Police Department (hereinafter "PPD") at all relevant and

material times hereto was a political subdivision and municipal corporation duly existing

and organized under the laws of the Commonwealth of Pennsylvania, with a regular

business address as above-captioned.

4.     Defendant, Richard Ross, Jr., at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as the Commissioner of the City of Philadelphia Police Department, with a regular business address as above-captioned.

5.     Defendant, Police Officer Jeffrey Schmidt, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as a Police Officer of the City of Philadelphia Police Department, with a regular business address as above-captioned.

6.     Defendant, Police Officer Sean S. Matrascez, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as a Police Officer of the City of Philadelphia Police Department, with a regular business address as above-captioned.

7.     Defendant, Police Officer John E. Cole, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as a Police Officer of the City of Philadelphia Police Department, with a regular business address as above-captioned.

8.     Defendant, Police Officer Timothy Miller, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as a Police Officer of the City of Philadelphia Police Department, with a regular business address as above-captioned.

9.     Defendant, Police Officer Samuel H. Hudson, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and

employee of Defendant, City, as a Police Officer of the City of Philadelphia Police Department, with a regular business address as above-captioned.

10.     Defendant, Police Sergeant John Morton, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as a Police Sergeant of the City of Philadelphia Police Department, with a regular business address as above-captioned.

11.     Defendant, Detective Michael McGoldrick, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as a detective of the City of Philadelphia Police Department, with a regular business address as above-captioned.

12.     Defendant, Detective Thomas Martinka, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as a detective of the City of Philadelphia Police Department, with a regular business address as above-captioned.

13.     Defendant, Lieutenant Anthony Mirabella, Jr., at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as a Lieutenant of the City of Philadelphia Police Department, with a regular business address as above-captioned.

14.     Defendant, Detective Phillip Nardo, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as a detective of the City of Philadelphia Police Department, with a regular business address as above-captioned.

15.     Defendant, homicide Detective Bambrusky, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as a homicide detective of the City of Philadelphia Police Department, with a regular business address as above-captioned.

16.     Defendant, homicide Detective Williams, at all times relevant and material hereto acted individually and in his official capacity as an agent, servant, worker and employee of Defendant, City, as a homicide detective of the City of Philadelphia Police Department, with a regular business address as above-captioned.

17.     At all relevant and material times, hereto, Defendants, and each of them, were acting by and through their agents, servants, workmen and employees, acting within the course and scope of their employment, duty and authority.

18.     At all relevant and material times, hereto, all Defendants, were engaged in a regular course of business transactions within the County of Philadelphia, City, Commonwealth of Pennsylvania.

19.     At all relevant and material times, hereto, Defendants City, Philadelphia Police Department, Richard Ross, Jr., Jeffrey Schmidt, Sean S. Matrascez, John E. Cole, Timothy Miller, Samuel Hudson, John Morton, Michael McGoldrick, Thomas Martinka, Anthony Mirabella, Phillip Nordo, Detective Bambrusky, Detective Williams, Seth Williams, Erin O'Brien, Rochelle Keyhan, Tiffany Oldfield and Jennifer Mitrick acted under color of state law.

27.     At all times material and relevant hereto, Defendants, the City of Philadelphia via the Philadelphia Police Department, and the individual police officers, police captain, lieutenants, sergeants, and police detectives were acting individually and in their official

capacities, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the Commonwealth of Pennsylvania and/or the City of Philadelphia.

28.     At all relevant and material times, hereto, all Defendants were acting both individually and by and through their agents, servants, workers, co-workers, supervisors, and employees.

29.     All of the acts alleged to have been done or not to have been done by Defendants were done or not done by said Defendants, their agents, servants, workers, co-workers, supervisors, and/or employees, all of whom were acting within the course and scope of their authority and/or employment with and on behalf of said Defendants.

30.     At all relevant and material times hereto, the police and detective Defendants acted personally and/or with the knowledge and acquiescence of each other and Defendant, Commissioner Ross.

31.     At all relevant and material times hereto each Defendant personally acted in his or her capacity as described with particularity below.

32.     At all relevant and material times, all individual Defendants worked for, were employed by and acted on behalf of Defendant, City of Philadelphia.

33.     At all times relevant and material hereto, each Defendant, named herein was the agent, servant, worker, co-worker, supervisor and/or employee of each of the Defendants named herein.

A.  FACTS GIVING RISE TO THE CAUSES OF ACTION

36. In or about November 2010, the Defendant, police officers and detectives were looking for the "Kensington rapist-murderer".

37.    It is believed, and therefore averred, that the police believed that one person had raped and murdered at least three women in Kensington – it was that person who was dubbed the "Kensington rapist-murderer".

38.    On November 28, 2010, at approximately 10:45 p.m., Rachel Patterson, a prostitute, claimed that she was walking on the 1900 block of Bockius Street when a male she had just met, allegedly the Plaintiff, grabbed her, put a box cutter against her neck after they entered a vacant lot after and she consensually undid her pants, at which point she screamed. Further, she stated that the offender had begun to choke her, but she managed to push him away enough to scream again and then the offender fled.

39.    Defendants, Cole and Miller, responded to the radio call for Ms. Patterson around 10:47 p.m. on November 28, 2010, took her initial report of the alleged events and, based upon information and belief, then relayed the first flash information over police radio.

40.    Based upon information and belief, the first flash description was of a light skin, skinny male, 5'8" to 5'11", about 180 to 200 pounds in a black hat and gray hoodie.

41.    On November 28, 2010, at approximately 11:00 p.m., the Plaintiff, a 5'5" Puerto Rican male with a closely shaved goatee, was initially stopped by Defendants, Schmidt and Matraszek, as the Plaintiff was walking on or about 2000 Wheatsheaf Lane, Philadelphia, Pennsylvania for no apparent reason other than his ethnicity.

42.    The Plaintiff, who is 5'5", provided Defendants, Schmidt and Matraszek, with his identification, despite not being given a reason for the stop, and was then permitted to leave the area.

43.    After Defendants, Schmidt and Matrascez, stop of the Plaintiff at 2000 Wheatsheaf Lane, they claimed that they personally received an updated flash which included a

description of clothing which matched the Plaintiff's for the attempted rape of Ms. Patterson. It was unclear if she initially claimed that it was a Puerto Rican, as opposed to a man of other colored ethnicity, or if she just described the skin tone of her assailant.

44.     After meeting with the complainant, Police Officers Cole and Miller gave second flash information through police radio that the suspect had dark jeans, a grey hoodie, a goatee and black and yellow jacket.

45.     At no time whatsoever did Ms. Patterson, state that her assailant any tattoos or permanent marks on or about his face or body.

46.     Despite the fact that Defendants, Schmidt and Matrascez, had Plaintiff's address and information from their earlier stop, at no point did they go to Plaintiff's house and/or otherwise look for him immediately after the radio call.

47.     Ms. Patterson was initially taken to the Special Victims unit where she came into contact with Defendant, McGoldrick.

48.     At approximately 11:58 p.m. on November 28, 2010, defendant Defendant, McGoldrick, took a statement from Ms.  Patterson at which time her assailant was described as a 35-year-old 5'11" Puerto Rican male with a medium build, light skin, goatee, wearing dark blue jeans, a grey hoodie and a black and yellow jacket.

49.     Furthermore, in her statement, Ms. Patterson stated that her assailant never touched her buttocks, breasts or vagina.

50.     Additionally, she stated that she never saw a knife or box cutter, but believed she felt a blade against her neck after she undid her pants.

51.     At no point did the police ask Ms.  Patterson if she was under the influence of anything, although she later explained in court she was under the influence of crack that night.

52.     She also stated that the male never removed or tried to remove any of his own clothing, nor did he ever try to remove any of her clothing.

53.     Again, at no point did she describe any tattoos on her alleged assailant.

54.     During this time period, there was a cross-investigation between the Special Victims Unit (hereinafter "SVU") and Homicide, named "Kensington Strangler" matter.

55.     As a result of the cross investigation with Homicide, Defendant, Detective McGoldrick claimed that he contacted Homicide after he interviewed Ms. Patterson because her assailant had the same M.O. as the "Kensington Strangler".

56.     The telephone call by Defendant McGoldrick to Homicide took place at approximately 2:00 a.m.

57.     Apparently, after leaving the SVU, Ms.  Patterson went and/or was taken to the Homicide unit.

58.     Later the Defendant detectives tied in the 75-48A of the pedestrian stop of the Plaintiff, who had already been let go and was not a suspect with regard to any purported crime, to the "Kensington rapist – murder" investigation.

59.     On November 29, 2010 at approximately 11:30 a.m., Defendant, Detective Nordo of the Homicide Unit, came into contact with Rachel Patterson with regard to investigating two or three rape/murder investigations and was given a brief description of a male, but photos shown to her from the imager did not provide a suspect pursuant to Defendant, Nordo.

60.    Based upon information and belief, defendant Detective Nordo, claims that he independently sought out and found, Ms. Patterson, apparently after having been notified about her complainant, at which time was told that she had already spoken with SVU.

61.    It was defendant, Detective Nordo's, belief that she did not know where the scene of the crime had been and, therefore, he drove Ms. Patterson throughout Kensington until they "found" the alleged location of her complaint.

62.    Apparently, Defendant, Nordo, did not know that she had already made a police report from the actual scene and provided a statement to SVU including the location.

63.    The purported location of the incident occurred around the corner from and/or near where Ms. Patterson was living at the time so Defendant, Nordo's allegations, made during the course of the criminal trial, did not make any sense.

64.    Ms. Patterson was taken to Homicide by Defendant, Nordo, at which time he allegedly attempted to have her identify her assailant by showing her a number of photographs and/or photographic arrays.

65.    After Ms. Patterson was not able to identify any of the persons shown to her by Defendant, Nordo, from the machine, Defendant, Nordo, then looked at the 48-A for the stop of the plaintiff.

66.    Based upon the 48A, Defendant, Nordo, attempted to obtain plaintiff's photograph from the imaging machine but was unable to do so.

67.    Thereafter, Defendant, Nordo, pulled up the plaintiff's driver's license photograph at which time Ms. Patterson purportedly made a positive identification of the plaintiff as her assailant.

68.     Based upon information and belief, Defendant, McGoldrick, believed that the homicide detectives and/or unit made the decision that the plaintiff was the "Kensington Strangler".

69.     Initially all police and detective Defendants suspected and were investigating the Plaintiff for being the "Kensington Rapist and Strangler" and his information was placed over the internet along with his photographs by at least one of the Defendant police and/or detectives personally.

70.     After, Defendant, Detective Nordo and/or McGoldrick, showed Ms. Patterson the motor vehicle department photograph of the Plaintiff (the only photograph documented to have been shown to her by this point), it is believed, and therefore averred, that Detective Nordo wrote an Affidavit of Probable Cause for homicide and/or attempted homicide which was approved by ADA Jennifer Mitrick.

71.     On November 29, 2010, Detective Crystal Williams contacted Defendant, McGoldrick, at approximately 12:24 p.m. and informed him that Homicide had brought Ms. Patterson in and that she had identified the defendant as her assailant.

72.     Sometime thereafter, Defendant, Nordo, prepared a memo noting the positive identification.

73.     Based upon information and belief, prior to the Homicide unit turning the matter back over to SVU, the police defendants published, via the internet and perhaps other means, a photograph of the plaintiff claiming that he was the "Kensington Strangler".

74.     Based upon information and belief, on November 29, 2010, prior to turning the matter back over to SVU, the Homicide unit brought in and/or arrested the plaintiff,

continuously tried to question him, about the Kensington strangulations, and failed to charge him for at least several days with any crimes.

75. On November 29, 2010, the Plaintiff was allegedly brought to the Homicide Unit "solely for questioning" by Defendants, Detectives Bambrusky and William, about the homicides that were unrelated to any allegations for which he was eventually tried.

76. The Plaintiff remained at the Homicide unit for three days; from November 29, 2010 to December 1, 2010, during which time he was strip searched and shown pictures of three homicide victims and was repeatedly questioned about them.

77. During the time that the Plaintiff was at Homicide, the claims of Ms. Patterson were never mentioned to the Plaintiff, and he believes he was arrested in that unit for the "Kensington Rape-Murders".

78. The Plaintiff was taken to be photographed and questioned by a Hispanic detective during Defendant's processing about the homicides.

79. Based upon information and belief, since they knew that they had arrested the wrong person, at some point between the Plaintiff being taken into custody at Homicide and needing a reason for keeping the Plaintiff in custody, the Defendant Detectives then falsely charged Plaintiff with attempted murder and attempted rape, among other charges, of Rachel Patterson and ADA Mitrick approved the charges without properly investigating and/or evaluating them beforehand.

80. Based upon information and belief, while the plaintiff was at Homicide, Defendant, Nordo, and/or maybe other defendants, showed the plaintiff to Ms. Patterson.

81. It is significant to note that the physical description provided by Ms. Patterson to Homicide differed from the one given to SVU.

82.     By this point, Defendants, Detective Nordo, Bambrusky and Williams had already provided Ms. Patterson with Plaintiff's description and particulars, as well as plaintiff's driver's license photo, so that she would repeat it to other police and/or detective personnel and/or testify to say that the Plaintiff was her perpetrator.

83.     It is believed, and therefore averred, that on November 29, 2010, the Plaintiff was actually arrested under the Defendant's alias a/k/a Christopher Sandle by Defendants, Cole and Miller who then took him to Homicide for questioning by Defendants, Detective Bambrusky and Williams, about the three-unrelated rape/murders. At that point, Defendant did not know what he had been arrested for although he had been hand-cuffed.

84.     According to police paperwork, Ms. Patterson subsequently went back to SVU where Defendant, McGoldrick had her do a photo identification of the plaintiff on November 30, 2010 at approximately 3:30 a.m.

85.     The statement of Ms. Patterson and the plaintiff's photo as given to Defendant, McGoldrick, was approved in SVU by Defendants, Lieutenant Anthony Mirabella, Jr. and Morton, for the arrest of the Plaintiff in Ms. Patterson's case.

86.     Sometime thereafter Defendants, McGoldrick, Mirabella and Morton, then approved the arrest of the Plaintiff for the attempted rape of Ms. Patterson only, although he had been held, and, according to the Plaintiff, and already arrested as the Kensington Rapist-Murderer by the Homicide Defendants initially.

87.     An arrest warrant was approved on November 30, 2010 at approximately 7:50 p.m. for Ms. Patterson's allegations only from SVU.

88.     During the course of the investigation of the identification of the person that came to be known as the "Kensington Strangler", the Defendant police and detectives made a

number of arrests and false arrests, based upon information and belief pursuant to various news stories that were published.

89.     The Defendant police and detectives were acting pursuant to the directives of then Police Commissioner Ross.

90.     The Plaintiff, apparently was one of the persons falsely arrested as being the "Kensington Strangler", but one of the few, if not the only, that was thereafter arrested and kept in custody with false allegations.

91.     It is believed, and therefore averred, that the Plaintiff was arrested and prosecuted for the crimes against Ms. Patterson because the Homicide Defendants-police realized, during the three days that Plaintiff was there, that he had been falsely questioned and held and was not the "Kensington rapist-murderer", but they needed a reason for having kept him in custody so long.

92.     It should be noted that at the time of his arrest the biographical information revealed that the Plaintiff was 5'5" or 5'6" and 154 pounds whereas Rachael Patterson stated that she was accosted by a 35-year-old male that was 5'11" medium build, light skinned Hispanic male which clearly does not meet the Plaintiff's description whatsoever.

93.     All Defendant, police and detectives, as well as Defendant, Jennifer Mitrick, personally disregarded the differences in Ms. Patterson's described offender and those of the Plaintiff.

94.     The Plaintiff was picked up, detained and, at some point, arrested without probable cause.

95.     All of the Defendants acted personally as more particularly described above and herein below.

96.     Based upon Plaintiff's information and belief, plaintiff was fingerprinted, photographed and supposed to be and/or actually was charged with the three murders as the "Kensington Strangler" late on November 30, 2010 or early December 1, 2010 under the alias Christopher Sandle. It is unclear if he was arraigned on these charges as he believes that he was during his preliminary arraignment.

97.     Because the Plaintiff was on state parole and/or probation, the state parole board placed a detainer on him.

98.     On December 22, 2010, the Plaintiff's parole officer brought him his detainer paperwork to the prison, which listed his lead charge as "murder" and not "attempted murder" - it is only on their notice of charges and hearing that the actual charge of murder, etc. as opposed to "attempted" is listed. See Exhibit "A" attached hereto and incorporated by reference, however, this evidences the Plaintiff's allegations.

99.     At no point whatsoever was the Plaintiff tried with the homicide of any of the three alleged victims of the "Kensington Rapist/Strangler". However, based upon the Plaintiff's information and belief, it was based on those falsifications that an arrest warrant was obtained and approved by ADA Mitrick, for the Plaintiff.

100.    At the time of these events, Seth Williams, was the head District Attorney who had assigned, ADA Jennifer Mitrick, to act on his behalf in the charging unit.

101.    Based upon information and belief, ADA Jennifer Mitrick failed to review any evidence that existed to that date that showed and/or proved the allegation that the Plaintiff was more likely than not the Kensington rapist/murderer as he was arrested without any probable cause.

102.    It is significant to note, that it is the Plaintiff's understanding that Ms. Patterson was deemed to be a victim of the Kensington rapist/murderer from the inception of her complaint.

103.    The Plaintiff, during his preliminary arraignment, states that the magistrate judge said that he was going to be charged with three counts of murder, three counts of REAP, two counts of PICC, two counts of Sexual Assault, Rape, Aggravated Assault and False imprisonment. However, according to the dockets, he was never arraigned on these charges. Note: On February 23, 2011, on the day of his line-up, the Defendant states he was subsequently charged with Attempted Murder, among other charges and notified of the same for the first time by his then attorney.

104.    At no point in time do the dockets reflect that the Defendant was actually prosecuted in court for "murder."

105.    At the point that the Plaintiff was arrested, he was in the process of obtaining worker's compensation benefits due to a work-related injury from on June 14, 2010, but because he was incarcerated on a detainer and could not make bail, he had to wait until the trial for the alleged attempted rape of Ms. Patterson to be completed, which was not done until September 30th, 2014, at which time the Plaintiff was found not guilty of all charges after a jury trial.

106.    During the course of the wrongful prosecution of the Plaintiff, it was discovered that he indeed was not the "Kensington Strangler" who was arrested and charged by January of 2011, however, none of the Defendant, District Attorney's Office Seth Williams, nor any ADA, would turn over any of the initial discovery that led to the allegations and falsities against the Plaintiff identifying him as the purported "Kensington

Strangler" these included, but were not limited to, ADA  Keyhan, Erin O'Brien, Tiffany

Oldfield, Jennifer Mitrick and Seth Williams himself at the respective times that they each

worked on the file and/or knew and acquiesced in the work on the file by the other ADAs.

107.     On or about January 17, 2011, a person named Antonio Rodriguez was taken into

custody on an unrelated bench warrant and was thereafter believed to be and was eventually

successfully prosecuted as the "Kensington Strangler".

108.     On January 17, 2011, the Plaintiff was still in custody, but nobody stopped the false

allegations and/or false affidavit of arrest that had been done for him as being the

"Kensington Strangler" from keeping him in prison and then being prosecuted. (Note:

Plaintiff's criminal attorneys were never given complete discovery according to motions

and the Plaintiff; the defense never received the Homicide file for the plaintiff; and,

discovery has not yet commenced in the instant matter, it is unclear which police paperwork

was, or was not, utilized to file the charges against the Plaintiff and to effectuate or confirm

his arrest other than the "Affidavit of Probable Cause Draft" which was obtained from his

court file. See Exhibit "B" attached hereto and incorporated by reference.

109.     Once the police confirmed the identity of the real "Kensington Strangler" via DNA

testing, on or shortly after January 17, 2011, none of the Defendants in the instant matter

withdrew the allegations and/or charges against the Plaintiff, nor were the news services

notified of the wrongful identity of the Plaintiff as the Kensington Strangler.

110.     According to the Plaintiff, he did not even know that his charges had been changed

until February 23, 2011 when his then attorney visited him because a line-up was to take

place while he was incarcerated and told him that his charges had been changed to

"<u>attempted</u>" murder, aggravated assault, attempted rape, unlawful restraint, and others regarding Ms. Patterson only.

111.   On February 23, 2011, the Plaintiff was to be in a line-up, however, it was cancelled because the Plaintiff had grown a beard and had longer hair since he was in protective custody and was not allowed to shave.

112.   Thereafter, the Defendant, district attorney's office, district attorney's and assistant district attorney's and prosecuting detective's purported that the Plaintiff attempted to change his description physically so that he could not be identified in a line-up.

113.   The line-up actually took place on March 15, 2011 at the prison.

114.   The Plaintiff had been allowed to shave and cut his hair before the line-up on March 15, 2011.

115.   On May 24, 2011, the Plaintiff's bail was lowered to ROR due to the very weak case against him. However, because of the state detainer, he remained incarcerated until after September 30, 2014, the date the jury found him not guilty at the time of trial.

116.   The plaintiff was not released from prison until October 8, 2014.

117.   During the course of criminal motions on, November 4, 2013, ADA Keyhan, admitted that the Plaintiff was never arraigned on murder charges as most, if not all, of Plaintiff's defense attorneys were trying to get missing discovery which they suspected would have showed the same.

118.   During the course of the Plaintiff's criminal prosecution, all of the named ADAs represented the Commonwealth; the City of Philadelphia; Defendant, Philadelphia District Attorney's Office; and Defendant District Attorney Seth Williams, at various stages of the criminal proceedings.

119.    Not one of the ADAs ever attempted to right the wrongs perpetrated against the Plaintiff by any and/or all of the other Defendants and the Plaintiff had to sit in prison for four years until his exoneration after a jury trial and his state detainer was lifted.

120.    In short, all of the Defendants conspired together to wrongfully convict and/or attempt to wrongfully convict the Plaintiff because they had made a false arrest and still maliciously prosecuted a case against him and acted with deliberate indifference towards his constitutional rights in an effort to cover up their errors.

121.    Plaintiff, Noel Quintana a/k/a Christopher Sandle's, criminal defense counsel provided the Defendants with ample evidence exonerating the Plaintiff and implicating other individuals in the alleged crimes charged and requested that Defendants investigate and prosecute the actual perpetrators of the alleged the alleged crimes.

122.    During the course of the prosecution of the Plaintiff in the matter of Ms. Patterson as the complaining witness, the Plaintiff was represented by several criminal defense attorneys all of whom kept trying to obtain all discovery and particularly that discovery pertaining to the Plaintiff's initial arrest from the Homicide file. See e.g., Exhibit "D" attached hereto and incorporated by reference.

123.    When it appeared that all the credible evidence showed that Plaintiff was truthful and innocent, Defendant Ross; Defendant Police Officers; the Defendant detectives; and their Defendant, supervisors tabled the "investigations" pending what all Defendants herein hoped would be Plaintiff's conviction.

124.    All Defendants, acted with deliberate indifference and were responsible for supervising, starting and perpetuating the arrest and prosecution of Plaintiff, Noel Quintana a/k/a Christopher Sandle, and the investigation into and trial of the allegations against him.

Despite their knowledge that there was no credible evidence to support Plaintiff's arrest and ample evidence exonerating him, they took no steps to investigate the true perpetrator(s) of the alleged crimes, and they acquiesced and/or participated in the unlawful detention and malicious and unlawful prosecution of Plaintiff, Noel Quintana a/k/a Christopher Sandle.

125.    There was ample evidence exonerating Plaintiff, Noel Quintana a/k/a Christopher Sandle, from any involvement in the alleged attempted rape, etc., of Ms. Patterson.

126.    There was ample evidence implicating individuals other than Plaintiff, Noel Quintana a/k/a Christopher Sandle, were responsible for the alleged attempted rape if Rachael Patterson.

127.    Plaintiff, Noel Quintana a/k/a Christopher Sandle was falsely arrested, falsely imprisoned, maliciously and wrongfully prosecuted by the Defendants.

128.    The Defendant's deprived the plaintiff of his liberty under the Constitution where they had a lack of probable cause and held him for investigation and/or arrested him for other crimes.

129.    The actions of all Defendants violated the Plaintiff's constitutional rights as all of the Defendants acted and/or failed to act with deliberate indifference to the Plaintiff.

130.    Defendants, City of Philadelphia, the Police Commissioner, P/O Jeffrey Schmidt, P/O Sean Matrascez, P/O John Cole, P/O Timothy Miller, P/O Samuel Hudson, P/O Sergeant John Morton, Detective Michael McGoldrick, Detective Thomas Martinka, Lieutenant Anthony Mirdedla, Jr., Detective Phillip Nordo, homicide Detective entered into a conspiracy with each other on November 29, 2010 and continuing for the purpose of impeding the true course of justice in the Commonwealth of Pennsylvania with intent to

deny Plaintiff, Noel Quintana a/k/a Christopher Sandle, the equal protection of the laws

and with the intent to injure him for lawfully enforcing or attempting to enforce his right

to equal protection under the law in that said Defendants, pursuant to the conspiracy,

caused Plaintiff, Noel Quintana a/k/a Christopher Sandle, to be unlawfully arrested, falsely

imprisoned, maliciously prosecuted and caused his incarceration and continuation until his

release of malicious prosecution against Plaintiff, Noel Quintana a/k/a Christopher Sandle

all with deliberate indifference.

131.    Throughout the course of his incarceration, upon receiving the evidence from

Plaintiff's respective criminal defense counsel, all Defendants, joined in the conspiracy

and/or conspiracies described above in all paragraphs and/or entered into a separate

conspiracy for the purpose of impeding the true course of justice in the Commonwealth of

Pennsylvania with intent to deny Plaintiff, Noel Quintana a/k/a Christopher Sandle, the

equal protection of the laws and with the intent to injure him for lawfully enforcing or

attempting to enforce his right to equal protection under the law in that said Defendants,

pursuant to the conspiracy or conspiracies, caused Plaintiff, Noel Quintana a/k/a

Christopher Sandle, to be falsely imprisoned and caused the incarceration and continuation

until his release of the malicious prosecution against Plaintiff, Noel Quintana a/k/a

Christopher Sandle all with deliberate indifference to his constitutional rights.

132.    The Defendants intentionally, willfully, wantonly, recklessly and without regard

for the evidence failed and refused to investigate and/or prosecute anyone other than

Plaintiff, thereby depriving Plaintiff of life, liberty, the pursuit of happiness, equal

protection under the laws, due process, and other rights under the Constitution of the United

States and the Constitution of the Commonwealth of Pennsylvania all with deliberate indifference to Plaintiff's constitutional rights.

133.   The Defendants intentionally, willfully, wantonly, recklessly and without regard for the evidence falsely arrested, falsely imprisoned, and maliciously prosecuted Plaintiff, Noel Quintana a/k/a Christopher Sandle, thereby depriving Plaintiff of life, liberty, the pursuit of happiness, equal protection under the laws, due process, and other rights under the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania all with deliberate indifference to Plaintiff's constitutional rights.

134.   The Defendants falsely arrested, falsely imprisoned, and maliciously prosecuted Plaintiff, Noel Quintana a/k/a Christopher Sandle, with the motive of discriminating against him on the basis of race and ethnicity due to his Puerto Rican heritage and acted with deliberate indifference to Plaintiff's constitutional rights.

135.   Defendants, City of Philadelphia, conspired with and/or through the other individual Defendants herein to present testimony at Plaintiff's preliminary hearing and trial about Plaintiff, matching the description of the perpetrator whom they identified as Plaintiff which they knew to be false all with deliberate indifference to Plaintiff's constitutional rights.

136.   The individual Defendants knew that the "identification" of Plaintiff, Noel Quintana a/k/a Christopher Sandle, by Rachel Patterson as her assailant was incorrect or false but persisted in holding the identification up as true and correct at the preliminary hearing and trial of Plaintiff for the crimes alleged all with deliberate indifference to Plaintiff's constitutional rights.

137.   On September 30, 2014, the Plaintiff was found not guilty on all charges after a jury trial at which the trial judge requested that he place on the record his entire testimony of the ordeal surrounding his arrest and incarceration pending trial.

138.   At all times material and relevant hereto, the Defendants were engaged in a joint venture, assisting and supporting one another in performing the various actions and inactions described above and lending the authority of their respective offices to one another during the said events, actions, and inactions.

139.   Although the Plaintiff was arrested on November 29, 2010, the actions put in motion that day due to the deliberately indifferent, faulty, negligent, reckless, careless and intentionally false allegations, arrest and prosecution of the Plaintiff by all Defendants, all causes of actions continued until such time as the jury exonerated the Plaintiff and the Parole Board released him from custody. Furthermore, each day that the Plaintiff was wrongfully, unconstitutionally, improperly and/or knowingly in custody awaiting his trial and exoneration, each cause of action against each Defendant was not actionable and/or nor did it accrue until the Plaintiff was proven Not Guilty at trial on September 30, 2014.

140.   Each cause of action set in motion on November 29, 2010, was of an ongoing and continuing nature which did not accrue, nor was it ripe for action, until such time as the Plaintiff was adjudicated Not Guilty.

141.   The actions and inactions of the Defendants resulted in numerous violations of the Plaintiff's constitutional rights.

142.   The Defendants had customs and practices in place that repeatedly resulted in constitutional violations including, but not limited to, failures to properly investigate crimes, failing to arrest the correct person(s), failing to drop charges once a person's

innocence is shown, fabricate allegations against a person to "close" a case and/or effectuate an arrest, impeding justice, and otherwise maliciously prosecute a person such as the plaintiff.

143. As a direct and proximate result of the said deliberately indifferent, negligent, reckless, careless, intentional and/or grossly negligent wrongful acts and failures to act of all Defendants, Plaintiff, Noel Quintana a/k/a Christopher Sandle, suffered the following injuries and damages:

    A.    Violation of his rights to liberty and property and to be free from deprivation of same without due process of law under the Fourth Amendment to the United States Constitution, including the right to be free from unlawful confinement to prison and from the unlawful deprivation and loss of worker's compensation benefits (a prisoner cannot get them);

    B.    Violation of his rights under the Fourteenth Amendment to the United States Constitution to equal protection under the law;

    C.    Severe depression, sleep disorder, severe shock and injury to his nerves and nervous system, and the onset and/or aggravation of his work related back and neck injuries. All of the foregoing injuries have rendered Plaintiff sick, sore, lame, prostrate, disabled and disordered and have forced him to suffer great mental anguish, embarrassment, humiliation, loss of enjoyment of life's pleasures, and physical and mental pain and suffering which may continue for an indefinite time into the future;

    D.    Deprivation and loss of the ability to follow his other worker's compensation benefits, usual occupation and customary daily duties and

other activities, which may continue for an indefinite time into the future all to his great detriment and loss.

E.     He may be required in the future to expend large sums of money for his medical care and treatment, all to his great financial detriment and loss, which may continue for an indefinite time into the future.

F.     Loss of his personal liberty, right to travel and his confinement to prison and the stigma of being labeled a murderer and/or rapist.

G.     Obligation to expend large sums of money for his criminal defense all to his great detriment and loss.

H.     Pain, suffering, humiliation, embarrassment, and loss of life's pleasures all to his great detriment and loss some or all of which may continue for an indefinite time into the future.

I.     The Plaintiff was in the process of applying for and/or obtaining worker's compensation benefits as a result of a work injury on June 4, 2010, and a civil action for wrongful termination as a result of said injury on June 29, 2010, all of which were precluded due to his incarceration. He thus has a worker's compensation benefit loss and civil losses for the wrongful termination as well some or all of which may continue for an indefinite time into the future.

J.     As a result of the charges that were brought against the Plaintiff, he was subjected to unfair and harsh ridicule, as well as an assault, by other prisoners while incarcerated, the effects and injuries from which may continue for an indefinite time into the future.

K.  As a result of the aforesaid unlawful conduct of the Defendants, Plaintiff sustained severe injuries to his nerves and nervous system, severe depression, and eating and sleep disorders.  All of the foregoing injuries have rendered Plaintiff, sick, sore, lame, prostrate, disabled and disordered and have forced him to suffer great mental anguish and physical pain, some or all of which may continue for an indefinite time into the future.

L.  As a result of the aforesaid negligence, the Plaintiff was unable to follow his usual and customary avocations and activities.

M.  As a result of the aforesaid unlawful conduct of the Defendants, Plaintiff, had been or will be obliged to receive and undergo medical attention and care and to expend various expenses for the injuries he has suffered, and expenditures for an indefinite time in the future to his great detriment and loss.

N.  As a result of the aforesaid unlawful conduct of the Defendants, Plaintiff, sustained medically determinable physical and/or mental impairment which prevented him from performing all or constitute his usual and customary daily activities and occupations and may continue for an indefinite time into the future.

O.  As a result of the aforesaid unlawful conduct of the Defendants, Plaintiff, had undergone great physical pain and mental anguish, which he may continue to endure the same for an indefinite time in the future to his great detriment and loss.

P.     As a result of the aforesaid unlawful conduct of Defendants, and each of them, Plaintiff, has suffered loss and depreciation of his earnings and earning capacity, and may continue to suffer the same for an indefinite time in the future to his great detriment and loss.

Q.     As a result of the aforesaid negligence of the Defendants, Plaintiff has incurred property damages and losses for which the Plaintiff has not been reimbursed and/or other out-of-pocket expenses all to the Plaintiff's detriment and loss.

R.     As a result of the unlawful conduct of the Defendants, Plaintiff was unlawfully confined to prison and prevented from enjoying his usual life as a free man until his exoneration after trial when the Parole Board finally released him.

144. As a result of the aforesaid wrongful actions and inactions of the Defendants, Plaintiff is entitled to and claims compensatory, punitive, treble, consequential, delay damages, costs and attorney's fees for an indefinite time into the future.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in an amount in excess of $75,000.00 each, together with compensatory damages, punitive damages, treble damages, consequential damages, delay damages, attorney's fees and costs.

## COUNT I
### 42 U.S.C. § 1983 AND FOURTH AMENDMENT VIOLATIONS - MALICIOUS PROSECUTION
### NOEL QUINTANA A/K/A CHRISTOPHER SANDLE V. ALL INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES

145.   All prior paragraphs are incorporated herein by reference as though each were fully

set forth below.

146.    As aforesaid, Defendants acting within the course and scope of their employment and under the color of state law deprived Plaintiff of his rights, privileges and immunities under the Laws and Constitution of the United States, and in particular, the rights to liberty and property and to be free the deprivation of liberty and property without due process of law through malicious prosecution, which violated the Plaintiff's rights under the Fourth ~~and~~ Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

147.    As aforesaid, Defendants acting within the course and scope of their employment and under the color of state law, intentionally, falsely and maliciously prosecuted Plaintiff, Noel Quintana a/k/a Christopher Sandle, and used their position of authority illegally and improperly to punish the Plaintiff by the above described actions, all of which actions violated the Plaintiff's rights under the Fourth Amendment to the Constitution of the United States and the laws of the United States, and were in violation of 42 U.S.C. § 1983.

148.    Defendants' conduct in causing the Plaintiff to be maliciously prosecuted was the proximate cause of Plaintiff's damages, including, but not limited to the loss of liberty, economic damage, and emotional damage. As a result of the aforesaid wrongful actions and inactions of the Defendants, Plaintiff sustained all of the injuries and damages set forth above and incorporated by reference herein, and he is entitled to compensatory, punitive, treble, consequential and delay damages for an indefinite time into the future.

149.    The above-described actions of all Defendants were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in an amount in excess of $75,000.00 each, together with compensatory damages, punitive damages, treble damages, consequential damages, delay damages, attorney's fees and costs.

## COUNT II
### 42 U.S.C. §§ 1983 AND FOURTH AMENDMENT VIOLATIONS - CONSPIRACY PLAINTIFF, NOEL QUINTANA A/K/A CHRISTOPHER SANDLE v. ALL INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES

150.   Plaintiff incorporates by reference the averments of the preceding paragraphs as fully as though same were set forth herein in their entirety.

151.   The aforesaid actions of Defendants in communicating, conferring, and mutually agreeing to fabricate evidence in order to prosecute the Plaintiff without probable cause constituted a conspiracy to deprive Plaintiff of his rights, privileges and immunities under the United States Constitution, particularly the right to be free from unreasonable seizure under the Fourth Amendment to the Constitution of the United States  and his right to procedural due under the Fourteenth Amendment to the Constitution of the United States, and was in violation of 42 U.S.C. § 1983.

152.   Defendants' conduct in causing the Plaintiff to be maliciously prosecuted was the proximate cause of Plaintiff's damages, including, but not limited to the loss of liberty, economic damage, and emotional damage. As a result of the aforesaid wrongful actions and inactions of the Defendants, Plaintiff sustained all of the injuries and damages set forth above and incorporated by reference herein, and he is entitled to compensatory, punitive, treble, consequential and delay damages for an indefinite time into the future.

153.   The above-described actions of all Defendants were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in an amount in excess of $75,000.00 each, together with compensatory damages, punitive damages, treble damages, consequential damages, delay damages, attorney's fees and costs.

## COUNT III
## 42 U.S.C. §§ 1983 AND FOURTH
## AMENDMENT VIOLATIONS - MONELL CLAIM
## PLAINTIFF, NOEL QUINTANA A/K/A CHRISTOPHER SANDLE v.
## DEFENDANT CITY AND DEFENDANT ROSS IN HIS OFFICIAL CAPACITY

164.   Plaintiff incorporates by reference the averments of the preceding paragraphs as fully as though same were set forth herein in their entirety.

165.   The Plaintiff believes and therefore avers that Defendants City of Philadelphia and Ross, in his official capacity, as the ultimate policy maker for police customs, practices, and policies for the City of Philadelphia at all times relevant and material hereto had adopted and maintained for many years a recognized and accepted custom of condoning and encouraging malicious prosecutions lacking probable cause, which custom was and is in violation of the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.

166.   The Plaintiff believes and therefore avers that said defendants at all times relevant and material hereto had adopted and maintained for many years a recognized and accepted custom, practice, and/or policy of failing to properly train, supervise and discipline detectives and police officers regarding the existence, meaning, and implementation of Constitutional restraints on maliciously prosecuting individuals without probable cause, which custom was

and is in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

167.   Plaintiff believes and therefore avers that said Defendants at all times relevant and material hereto had adopted and maintained for many years a recognized and accepted custom, practice, and/or policy of failing to properly train detectives and police officers regarding the existence, meaning, and implementation of Constitutional restraints on maliciously prosecuting individuals without probable cause -- including appropriate in-service training of all detectives and officers and retraining of detective and officers known to have engaged in malicious prosecution, which custom was and is in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

168.   Plaintiff believes and therefore avers that it was the custom, practice, and/or policy Defendants, City of Philadelphia and Richard Ross, to ignore exculpatory evidence, to fail to investigate further to apprehend the actual criminals, and to participate in improper and malicious prosecutions, including prosecutions where the exculpatory evidence was overwhelming, and where there was no reliable evidence justifying prosecution.

169.   Plaintiff believes and therefore avers that it was the custom, practice, and/or policy of Defendants, City of Philadelphia and Richard Ross to tolerate racially and ethnically discriminatory motives by police and detective personnel in prosecuting cases for which probable cause was lacking.

170.   Plaintiff believes and therefore avers that it was the custom, practice, and/or policy of Defendants, City of Philadelphia and Richard Ross, to utilize inadequate hiring standards and procedures, which resulted in the hiring of police and detective personnel

who lacked the requisite education, judgment and character to perform their positions without violating the civil rights of persons within the City of Philadelphia.

171.    The Plaintiff believes and therefore avers that said Defendants at all times relevant and material hereto were deliberately indifferent to the rights of individuals to be free from malicious prosecutions without probable cause, which deliberate indifference violated and caused the violation of the Plaintiff's rights under the Fourth Amendment of the Constitution of the United States and 42 U.S.C. §1983 through his malicious prosecution.

172.    The aforesaid customs and/or policies of said Defendants violated and caused the violation of the Plaintiffs rights under the Fourth Amendment of the Constitution of the United States and 42 U.S.C. §1983 through his malicious prosecution by the individual defendants herein.

173.    As a direct and proximate result of the violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983 by said Defendants, the Plaintiff was wrongfully deprived of his liberty and incarcerated for four years and sustained all of the injuries and damages set forth hereinabove, and he is entitled to compensatory, punitive, treble, consequential and delay damages for an indefinite time into the future.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in an amount in excess of $75,000.00 each, together with compensatory damages, punitive damages, treble damages, consequential damages, delay damages, attorney's fees and costs.

**COUNT VI**
**MALICIOUS PROSECUTION – STATE LAW**
**NOEL QUINTANA A/K/A CHRISTOPHER SANDLE V. ALL INDIVIDUAL**
**DEFENDANTS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES**

174.    All prior paragraphs are incorporated herein by reference as though fully set forth.

175.    Defendants, individually and in their respective official capacities, and by and through their respective agents and employees, maliciously, unlawfully and without justification prosecuted Plaintiff, Noel Quintana a/k/a Christopher Sandle.

176.    At all times relevant and material hereto, all of the Defendants, each and every one of them, instituted and carried out the prosecution of the Plaintiff despite their knowledge that the charges they initiated and brought against the Plaintiff were false.

177.    In the alternative, at all times relevant and material hereto, the Defendants initiated and carried out the prosecution of the Plaintiff with undue haste, on insufficient factual grounds to warrant a prudent person to believe that Plaintiff had committed any of the offenses with which he was charged, and with total disregard of the factual grounds that demonstrated Plaintiff's lack of culpability and acted with malice consisting of ill will toward the Plaintiff and/or a reckless and oppressive disregard for Plaintiff's rights.

178.    The above-described actions of all Defendants were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

179.    As a result of the aforesaid wrongful actions and inactions of the Defendants, Plaintiff sustained all of the injuries and damages set forth hereinabove, and he is entitled to and claim compensatory, punitive, treble, consequential and delay damages for an indefinite time into the future.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in an amount in excess of $75,000.00 each, together with compensatory

damages, punitive damages, treble damages, consequential damages, delay damages, attorney's fees and costs.

## COUNT VII
### NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS NOEL QUINTANA A/K/A CHRISTOPHER SANDLE V. DEFENDANT CITY OF PHILADELPHIA AND ALL INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES

180.    All prior paragraphs are incorporated herein by reference as though fully set forth.

181.    Defendants, individually, in their respective official capacities, and by and through their respective agents and employees, negligently and willfully, wantonly, recklessly, and intentionally inflicted emotional distress upon Plaintiff, Noel Quintana a/k/a Christopher Sandle.

182.    As a result of the Defendants' negligent, willful, wanton, reckless and intentional infliction of emotional distress upon Plaintiff, Noel Quintana a/k/a Christopher Sandle, suffered the damages as aforesaid.

183.    As a result of the aforesaid wrongful actions and inactions of the Defendants, Plaintiff is entitled to and claim compensatory, punitive, treble, consequential and delay damages for an indefinite time into the future.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in an amount in excess of $75,000.00 each, together with compensatory damages, punitive damages, treble damages, consequential damages, delay damages, attorney's fees and costs.

## JURY TRIAL DEMAND

A jury trial is demanded.

Respectfully submitted,


/s/ Rania M. Major, Esquire
Rania M. Major, Esquire
RANIA MAJOR, P.C.
2915 North 5th Street
Philadelphia, PA  19133
(215) 291-5009
ATTY. I.D. NO. 51298
ATTORNEY FOR PLAINTIFF


Dated:

# EXHIBIT

## "A"

| COMMONWEALTH OF PENNSYLVANIA BOARD OF PROBATION AND PAROLE PBPP-257N | NOTICE OF CHARGES AND HEARING | | | BOARD PAROLE |

| ARREST REPORT NO: 1 | DATE OF RPT. 12/28/2010 | Jagober | 8/17/2011 2:56:38 PM | |

| OFFENDER NAME (Last, First, Middle Initial) QUINTANA, NOEL | PAROLE NO. 810DR | SID NO. 171-27-45-1 | INST. & NO. SCI - GRATERFORD BS8081 | |

| COUNTY/STATE OF CONV. PHILADELPHIA/PA PHILADELPHIA/PA | SENTENCE 15Y 01M 29D 35Y 04M 00D 14Y 01M 29D 33Y 04M 00D | MINIMUM DATE 02/10/2007 02/10/2006 | RELEASE DATE 04/03/2007 04/03/2007 | MAXIMUM DATE 04/12/2027 04/12/2025 |

| PRESENT OFFENSE PWID; ROBB PIC; CRIM CONSP PWID; ROBB PIC | | | | EFF. DATE OF DELINQ. (if applicable) |

This notice is in reference to your upcoming hearing:

☐ PRELIMINARY HEARING          ☒ DETENTION HEARING          ☐ PROBABLE CAUSE
☐ VIOLATION HEARING            ☐ REVOCATION HEARING          ☐ PANEL HEARING

## CHARGES

You are charged with the following:

PP# 672153

NEW CRIMINAL ARREST

ARREST DATED: 11/30/2010  (11-29-2010) 3:00 Pm.

NAME & LOCATION OF ARRESTING AUTHORITY: PHILADELPHIA POLICE, PHILADELPHIA, PA

OFFENSES (GRADING): MURDER (H), AGG ASSAULT (F1), RAPE (F1), UNLAWFUL RESTRAINT (F2), FALSE IMPRISONMENT(F2), SEXUAL ASSAULT (F2), PIC(M1), SIMPLE ASSAULT(M2), REAP(M2)

MC# 51-CR-0051708-2010
DC# 10-24-099167

OFFENDER'S SIGNATURE: _____  DATE SIGNED: _____

You are now being charged with the above additional violations which will be heard along with the original charges at your violation and/or revocation hearing.

| HEARING DATE AND TIME 12/28/2010  09:00 | PUBLIC DEFENDER OR PRIVATE ATTORNEY PHILADELPHIA COUNTY PUBLIC DEFENDER ASSOC. 1441 SANSOM STREET PA | LOCATION PHILADELPHIA COUNTY PRISON CMR, 7901 STATE ROAD PHILADELPHIA, PA 19136 |

| AGENT NAME/SIGNATURE/DATE | SUPERVISOR NAME/SIGNATURE/DATE | OFFICE NAME PHILADELPHIA DISTRIC |

| COLLINS, DAVID | Date | MAYS, BRUCE F | Date | |

# EXHIBIT

# "B"



# EXHIBIT

## "C"

RECEIVED
11/17/2013 06:56:49 PI
ACTIVE CRIMINAL RECORDS
CRIMINAL MOTION COURT
By: A. SCO

**LAW OFFICES OF HUMBLE & PATTON**
**By: Richard E. Patton, Esquire**
**Attorney for petitioner**
**Identification No. 43293**
**2 Penn Center Plaza/Suite 200**
**1500 JFK Bvld**
**Philadelphia, PA 19102**
**E-Mail: mailto:Richard@REPESQLAW.NET**

### IN THE COURT OF COMMON PLEAS
### CRIMINAL DIVISION
### PHILADELPHIA COUNTY , PENNSYLVANIA

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-51-CR- 0003448-2011** |
| | : | |
| **V.** | : | |
| | : | |
| **CHRISOPHER SANDLE** | : | **CRIMINAL DIVISION** |
| **(PP No.0672153)** | | |

### OMNIBUS PRETRIAL MOTION
### FOR RELEIF PUSUANT TO PA R.CRM. P., RULE 578

**I.    MOTION FOR BILL OF PARTICULARS OR OTHER APPROPRIATE RELIEF**

**TO THE HONORABLE, THE JUDGES OF THE SAID COURT:**

Defendant, Christopher Sandle , by his counsel, Richard E. Patton, Esquire , hereby moves for a bill of particulars or other appropriate relief, and represents:

1. This motion is filed pursuant to Rule 572, Pa.R.Crim.P., and the Due Process and Double Jeopardy Clauses of the United States and Pennsylvania Constitutions.

2. On January 10, 2012 the undersigned entered his appearance as a court appointed attorney to the above captioned matter.[1]

3. On February 16, 2012 petitioner and ADA O'Brien appeared in court. The undersigned verbally requested from Assistant District Attorney Erin O'Brien that the discovery be supplied and forwarded to the undersigned so that the appropriate motions could be drafted and filed if necessary.[2]

---

[1] It should be noted that defendant was originally arrested and arraigned on murder charges; bail was set pursuant to those charges. Currently the undersigned has not received a copy of that bill of information or the supporting documents underlying those charges after repeated requests from the defense, beginning in February 2012.. Tod date, the defense has not received any bill of information, probable couse affadavits, bail documents, etc.

[2] It should be noted that the court docket sheet indicates discovery was complete when , in fact, it had not been completed and was only requested by the undersigned. After the verbal request placed on the record, ADA Obrien forwarded a incomplete packet of discovery by later date 21

4. On February 21, 2012 the undersigned received a copy of a letter indicated that discovery was enclosed and requested reciprocal discovery. As previously represented the discovery was not complete and lacking additional discovery including photos, photo spreads, police reports generated by the detectives involved in this matter , and the alleged victim's criminal history (emphasis added).30 November 2010.

5. The matter was re-scheduled for March 16, 2012 however the undersigned was in hospital and it was continued. ADA O'Brien was previously contacted and informed of the advance request for the continuance and id not oppose it. She further indicated the discovery that was not contained in the original packet would be forthcoming.

6. On July 25, 2012 the undersigned received a letter from the newly assigned ADA Tiffany Oldfield and packet of discovery containing prison calls and records; the letter indicated it contained a copy of the alleged victims prior criminal record but it did not appear in the discovery.

7. On August 6. 2012, a Motion to Quash was filed by the defendant.

8. On August 13, 2012, the undersigned was in the middle of an unrelated jury trial and unavailable and the matter was continued until December 12, 2012.

9. On December 12, 2012, the undersigned appeared in court and rejected the Commonwealth's offer and requested further discovery, specifically the photos, photo spreads, and additional police reports generated by Detectives participating in the investigation. The undersigned had repeatedly requested from ADAs O'Brien and Oldfield that the discovery was needed for the preparation of the defense and pre-trial motions. It further was requested that the undersigned be forwarded certain documents from a homicide investigation possibly involving the defendant. To date the defense has never received the documentation regarding this issue.

10. It is impossible for petitioner to prepare for trial and adequately defend against the charges which he was originally arrested for and which are vague and nonspecific..

11. Without the requested documents a bill of particulars cannot be drafted, an complete motion to suppress cannot be drafted or filed and petitioner's constitutional right not to be tried again on the same charges or different charges is abridged.

12. The Commonwealth's refusal to respond to the request for the arrest warrant and probable cause documentation as well as the other requested discovery prevent the undersigned to draft and support a complete a bill of particulars, which violates Rule 572, Pa.R.Crim.P., and the Due Process and Double Jeopardy provisions of the United States and Pennsylvania Constitutions.

WHEREFORE, for each of the foregoing reasons, it is requested that this Court order that the Commonwealth provide an immediate answer to the request for the documents. In the alternative, the Information should be dismissed with prejudice.

February 2012'

Respectfully submitted,

By:

_____
*RICHARD E. PATTON ,ESQUIRE*
*Attorney for Defendant*
*2 Penn Center Plaza-Suite 200*
*1500 JFK Blvd*
*Philadelphia, PA 19102*
*E-Mail:*
*mailto:Richard@REPESOLAW.NET*

**Date: 17 November 2013**

**LAW OFFICES OF HUMBLE & PATTON**
By: Richard E. Patton, Esquire
**Attorney for petitioner**
**Identification No. 43293**
**2 Penn Center Plaza/Suite 200**
**1500 JFK Bvld**
**Philadelphia, PA 19102**
E-Mail: mailto:Richard@REPESQLAW.NET

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
PHILADELPHIA COUNTY , PENNSYLVANIA

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-51-CR- 0003448-2011** |
| | : | |
| **V.** | : | |
| | : | |
| **CHRISOPHER SANDLE** | | **CRIMINAL DIVISION** |
| (PP No.0672153) | | |

<u>MOTION FOR COMPULSORY DISCLOSURE, DISCOVERY AND INSPECTION</u>

TO THE HONORABLE, THE JUDGES OF THE SAID COURT:

    Defendant, Christopher Sandle,  by his counsel, Richard E. Patton, Esquire , hereby moves for compulsory disclosure, discovery, and inspection, and represents:

    1. Petitioner, the defendant in the above captioned case, was arrested on 30 November 2010, and is charged with Attempted Rape.

    2. This motion is filed pursuant to Rule 573, Pa.R.Crim.P., and the Due Process Clauses of the United States and Pennsylvania Constitutions.

    3. The District Attorney's Office, through Assistant District Attorney O'Brien[3] has provided the defendant with copies of the Investigating Detective's Report (75-48); documentation of two (20 line ups; a photo spread; .

    4. Undersigned counsel on record, February 2012, requested further documentation, specifically, **all** generated police reports, including detective reports and related documentation, the alleged victims criminal extract; the defendant's criminal extract; any documentation relating to the stop of defendant on the night of the alleged incident; and any further documentation relating to an unrelated homicide investigation that identifies the defendant as the suspect.

---

[3] ADA O'Brien was the first ADA who assured the undersigned that the discovery would be forthcoming if it had not been complete after my perusal.

5.  Two different ADAs assured the undersigned, through verbal conversations and emails (after receiving letters from them) they would provide the information repeatedly requested. See Exhibit "A" Attached hereto and incorporated herein as if fully set forth.

6.  The requested material in the informal discovery request is necessary for the preparation of the defense. It should be disclosed in the interests of justice and may be favorable and/or exculpatory in nature.

WHEREFORE, for each of the foregoing reasons it is requested that this Court order disclosure, discovery, inspection and production of all items enumerated in defendant's written informal discovery request.

Respectfully submitted,

By:

_____
RICHARD E. RATTON ,ESQUIRE
Attorney for Defendant
2 Penn Center Plaza-Suite 200
1500 JFK Blvd
Philadelphia, PA 19102
E-Mail:
mailto:Richard@REPESOLAW.NET

RECEIVED
11/17/2013 06:56:49 PI
ACTIVE CRIMINAL RECORDS
CRIMINAL MOTION COURT
By: A. SCO

**LAW OFFICES OF HUMBLE & PATTON**
**By: Richard E. Patton, Esquire**
**Attorney for petitioner**
**Identification No. 43293**
**2 Penn Center Plaza/Suite 200**
**1500 JFK Bvld**
**Philadelphia, PA 19102**
**E-Mail: mailto:Richard@REPESQLAW.NET**

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
PHILADELPHIA COUNTY , PENNSYLVANIA

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-51-CR- 0003448-2011** |
| | : | |
| **V.** | : | |
| | : | |
| **CHRISOPHER SANDLE** | : | **CRIMINAL DIVISION** |
| **(PP No.0672153)** | | |

MOTION FOR SANCTIONS FOR VIOLATION OF DUTY TO DISCLOSE

**TO THE HONORABLE, THE JUDGES OF THE SAID COURT:**

Defendant, Christopher Sandle , by his counsel, Richard E. Patton, Esquire, hereby moves for sanctions, and represents:

1. This motion is filed pursuant to Rule 573, Pa.R.Crim.P., and the Due Process and Right to Counsel provisions of the United States and Pennsylvania Constitutions.

2. On February 16, 2011, petitioner submitted a verbal discovery request on the record to the Commonwealth, in open court.[4]

3. The Commonwealth responded to the verbal discovery request in writing on February 21, 2011 but provided a partial package of discovery. Certain items were missing such as the Bill or Information, Probable Cause Affidavits, certain identified police reports generated by detectives assigned to the case.

---

[4] The Court docket sheet indicates 'discovery complete" which is an erroneous insertion. The undersigned did not receive the partial discovery package form ADA O'Brien until 21 February 2012. Please see Docket sheet for date: 2/16/2012 and later dated letter from ADA O'Brien marked as Exhibit "A" attached hereto and incorporated herein as if fully set forth. Shortly after this, ADA O'Brien was replaced by ADA Oldfield.

4. The next appearance in court was August 13, 2012 wherein the undersigned was unavailable and in the hospital but made contact with the ADA regarding the missing discovery[5]; the matter was rescheduled for December 12, 2012. However, weeks before that, in July 2012 contact were made with ADA Oldfield, who assured the undersigned that the aforementioned missing or unsupplied discovery would be provided forthwith.

5. On December 21, 2012, the undersigned placed the Court on notice regarding the discovery and the District Attorney's Office assured the court and the defense that the discovery would be made available and that it would be looked into by ADA O'Brien.[6]

6. On November 4, 2013, the undersigned informed the court that the discovery never was forwarded to the defense as promised and the matter could not be tried due to the discovery, specifically certain documents were never provided which hampered the defense and a complete omnibus motion could not be filed due to the District Attorney's reluctance to turn over the discovery.

7. Not satisfied with the Commonwealth's response, petitioner filed a motion with this Court on <u>17 November 2013,</u> requesting that this Court order the disclosure requested in the informal discovery request. This motion is incorporated, and attached as Exhibit "C".

8. Counsel cannot effectively represent petitioner at trial if the Commonwealth is permitted to introduce the evidence it improperly failed to previously disclose in violation of Rule 573 [305], Pa.R.Crim.P. The introduction of such evidence at trial would be fundamentally unfair, prejudicial and in violation of due process of law.

9. Because of the prejudice caused to petitioner, the appropriate remedy is exclusion from trial of the evidence just disclosed by the prosecution.

WHEREFORE, for each of the foregoing reasons it is respectfully requested that this Court grant a motion in limine prohibiting the Commonwealth from introducing any testimony or evidence at trial either directly or indirectly concerning (1) any in-court or out-of-court identification of petitioner by either *Rachel Peterson or Daniel Bofman*, or (2) any identification of a photograph or post incident identification as being that of petitioner.

Respectfully submitted,

By:

*RICHARD E. PATTON ,ESQUIRE*
*Attorney for Defendant*
*2 Penn Center Plaza-Suite 200*
*1500 JFK Blvd*
*Philadelphia, PA 19102*
*E-Mail:*
*mailto:Richard@REPESOLAW.NET*

---

[5] On July 25 and August 21, 2012, the undersigned received two letters containing partial discovery and a plea offer. Both letters were sent by ADA Oldfield and in the contents of the last letter, it indicated discovery was complete. The undersigned texted ADA Oldfield and notified discovery was not complete and the documents requested related to the Bill of information, probable cause affidavits, additional investigative police reports form Detective Nardo and any related police reports connecting the defendant to a series of murders, which was the basis for the defendant's arrest. ADA Oldfield indicated she would look into it and get back with the discovery.
[6] ADA O'Brien then assumed the control of the case again. Trial was scheduled for November 4, 2013.