IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NOEL QUINTANA, | |
|---|---|
| *Plaintiff,* | |
| v. | CIVIL ACTION<br>No. 17-0996 |
| CITY OF PHILADELPHIA, *et al.*, | |
| *Defendants.* | |

**PAPPERT, J.** April 3, 2019

## MEMORANDUM

The Court has written extensively about the facts of this case in two prior memoranda. *See* (ECF Nos. 14, 51). In summary, Noel Quintana was arrested and prosecuted for attempted rape, attempted sexual assault, aggravated assault and possession of an instrument of crime. He was acquitted on all charges by a jury. Quintana contends in this lawsuit that he was only charged and prosecuted for these crimes because the Philadelphia police were covering up for their inability to charge Quintana for a string of rapes and murders committed by an assailant dubbed the Kensington Strangler.

Quintana originally filed suit in the Philadelphia County Court of Common Pleas alleging false arrest, false imprisonment and malicious prosecution in violation of the Fourth Amendment to the United States Constitution and Pennsylvania state law, conspiracy to maliciously prosecute, race discrimination in violation of 42 U.S.C. § 1981, conspiracy to discriminate on the basis of race in violation of 42 U.S.C. § 1985, negligent and intentional infliction of emotional distress and prosecutorial misconduct.

1

*See* (Notice of Removal Ex. A, ECF No. 1). The Court previously dismissed all but the malicious prosecution claims. *See* (ECF Nos. 15, 52; Third Am. Compl. ¶¶ 145–149, 174–179).

Quintana's original Complaint named twenty-four defendants. *See* (Notice of Removal Ex. A). All but six were previously dismissed along with the other claims. *See* (ECF Nos. 15, 52). The remaining defendants—Sergeant John Morton, Detective Michael McGoldrick, Detective Joseph Bamberski, Lieutenant Anthony Mirabella, Detective Crystal Coleman[1] and Philip Nordo—now move for summary judgment. Quintana, either in response to Defendants' Motions or during oral argument, withdrew the case as to Morton, McGoldrick, Bamberski, Mirabella and Coleman, leaving for the Court to decide only whether Nordo's Motion should be granted.[2] For the following reasons, the Court enters judgment for Nordo as well.

I

Quintana's claims arise from his prosecution for the attempted rape and assault of Rachel Patterson in Philadelphia's Kensington neighborhood. Patterson's assault occurred on November 28, 2010. (Pl.'s Stmt. of Facts ("Pl.'s SMF") ¶ 1, ECF No. 76–1.) Quintana's preliminary arraignment on the charges occurred on December 1, 2010. (Defs.' Joint Stmt. of Facts ("Defs.' SMF") Ex. U, ECF No. 65.) He was tried and acquitted in September of 2014. (Defs.' SMF Ex. Y.)

---

[1] At the time of the events in question, Detective Coleman's last name was Williams. *See* (Pl.'s Resp. Opp'n Defs.' Mot. ("Pl.'s Resp.") Ex. SS ("Coleman Dep.") 4:13–16, ECF No. 69). The Court will refer to her as Detective Coleman.

[2] Quintana withdrew his claims against Detective Bamberski in his response to Defendants' Joint Statement of Undisputed Facts. *See* (Pl.'s Resp. Defs.' SMF ¶¶ 60–63, ECF No. 69). Quintana's claims against Morton, McGoldrick, Mirabella and Coleman were withdrawn by Quintana's counsel during oral argument on the Motions. *See* (Hr'g Tr. 4:8–24, 86:24–87:1, 88:7–14, 91:20–92:5, ECF No. 96).

2

At all times relevant to this case, Philip Nordo was a detective assigned to the Kensington Strangler task force in the Homicide Unit of the Philadelphia Police Department. (Pl.'s Resp. Opp'n Defs.' Mot. ("Pl.'s Resp.") Ex. TT ("Nordo Dep.") 10:18–11:13, ECF No. 69). The task force was created by the captain of the Homicide Unit to investigate a string of rapes and murders in Kensington. (Nordo Dep. 25:4–28:3.)

The record reveals that Nordo's involvement with the investigation into Patterson's assault spanned, at most, several hours on November 29, 2010. On November 28, the night of the assault, Detective Michael McGoldrick of the Special Victims Unit called Homicide Detective Crystal Coleman to report the assault to the Kensington Strangler task force. (Pl.'s Resp. Ex. SS ("Coleman Dep.") 17:9–14.) Nordo was "assigned Patterson's case" between 8:00 and 9:00 a.m. on November 29. (Pl.'s SMF ¶ 12; Pl.'s Resp. Ex. GG ("Trial Tr.") 45:3–10.) Nordo testified that he picked Patterson up that morning, drove her to the location of the assault and secured the area before bringing Patterson into the Homicide Unit.[3] (Pl.'s SMF ¶¶ 18, 21–22.) Once at Homicide, Nordo asked Patterson to try to identify her attacker from a series of photo arrays. (*Id.* at ¶¶ 23–24.) While Patterson was viewing the arrays, Nordo received a 75-48A Pedestrian Investigation Report which stated that Noel Quintana had been stopped by police around the time and location of Patterson's assault and fit the flash description of the attacker. (*Id.* at ¶ 24; Pl.'s Resp. Ex. C.)

For some reason, Nordo had trouble creating a new photo array using Quintana's picture for Patterson to view, so he moved to another computer to retrieve Quintana's

---

[3] Quintana disputes that Nordo drove Patterson to the crime scene on November 29. *See* (Pl.'s SMF ¶¶ 18–20). There is no record evidence to support Quintana's skepticism. Moreover, for the reasons stated in Section III, *infra*, this dispute is immaterial to Quintana's malicious prosecution claim.

3

driver's license photo. (Pl.'s SMF ¶ 25; Trial Tr. 39:23–40:13.) Patterson identified Quintana as her attacker from the single photo that appeared on Nordo's computer screen.[4] (Trial Tr. 41:7–7; Pl.'s SMF ¶ 33); *see also* (Defs.' Mot. Ex. P). After Patterson had positively identified Quintana from the single photo, Nordo wrote and signed a memorandum:

> The complainant was shown photos from the photo imager and was unable to identify the male that attacked her. Detectives were later provided with a 75-48A that provided information of a male that was stopped in the general vicinity of where this female complainant was attacked. A BMV photo was generated as a result of this pedestrian investigation and that photo was positively identified by this female complainant.

(Def.'s Ex. Q.) Patterson's identification of Quintana from the single photograph was also recorded on a Homicide Unit activity sheet. (Pl.'s Resp. Ex. E.)

That same day, Detective Coleman contacted Detective McGoldrick to report the identification. (Defs.' SMF ¶ 36; Coleman Dep. 7:2.) McGoldrick knew from his communication with Coleman that identification was made from a single photo, rather than a standard photo array. (Defs.' SMF ¶ 37.) McGoldrick never communicated with Nordo about the identification or anything relating to Patterson's case. (*Id.* at ¶ 38; Pl.'s Resp. Ex. RR ("McGoldrick Dep.") 84:7–20.)

On November 30, at approximately 3:30 a.m., Patterson identified Quintana in an eight-person photo array prepared by the Special Victims Unit. (Defs.' SMF ¶ 39); *see also* (Pl.'s Resp. Ex. P). McGoldrick then contacted the District Attorney's Office, and an Assistant District Attorney instructed him to prepare an Affidavit of Probable Cause for Quintana's arrest. (McGoldrick Dep. 44:3–9; Defs.' SMF ¶ 42.) McGoldrick's

---

[4] At Quintana's criminal trial, Patterson offered conflicting testimony that she identified Quintana from an eight-person photo array while she was in the Homicide Unit with Nordo. (Pl.'s SMF ¶¶ 25, 36.)

4

Affidavit summarizes Patterson's account of the assault and states that Quintana had been stopped by police around the time and location of the assault and fit the flash description of the attacker. The Affidavit also states that Patterson positively identified Quintana from a photo array at the SVU:

> On 11-30-10 at 3:30am the complainant wasa [sic] shown a photo spread by the affiant inside the Special Victims Unit which consisted of the the [sic] defendant Noel Quintana along with 7 other males at which time the complainant positively ID'd Noel Quintana as the male who assaulted her.

(Pl.'s Resp. Ex. Q.) The Affidavit does not mention Patterson's purported single-photo identification of Quintana to Nordo. (*Id.*) Quintana's arrest for Patterson's assault, "pursuant to [the] approved affidavit," was reported on November 30 at 12:45 p.m.[5] (Pl.'s Resp. Ex. V.)

II

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where "a reasonable jury could return a

---

[5] At his deposition, Quintana testified that on November 29, Nordo and other Homicide officers arrested him for and questioned him about the Kensington Strangler murders. (Pl.'s SMF ¶¶ 51–55.) According to Quintana, Nordo tried to pressure him to confess to the murders. (*Id.* at ¶ 55.) Nordo has denied that he had any interaction with Quintana until Quintana's criminal trial, but he nonetheless "accept[s] [Quintana's] claim that he was questioned by Detective Nordo" on November 29 for purposes of this Motion. (Defs.' SMF ¶ 35 & n.4.)
    Quintana's testimony, accepted as true, is irrelevant to his claims against Nordo. Quintana was not detained pursuant to legal process for the Kensington Strangler murders and thus could not have been maliciously prosecuted for those crimes. *See Wallace v. Kato*, 549 U.S. 384, 389–90 (2007) (noting that malicious prosecution claims redress the "wrongful institution of legal process"—"when, for example, [the plaintiff] is bound over by a magistrate or arraigned on charges") (emphasis omitted); *see also Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("[U]nlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits damages for confinement imposed pursuant to legal process.").

5

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice. *Id.* at 252. There must be evidence by which a jury could reasonably find for the non-moving party. *Id.*

Reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). A court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

III

To prevail on his Section 1983 Fourth Amendment malicious prosecution claim, Quintana must establish (1) Nordo initiated a criminal proceeding, (2) the proceeding ended in Quintana's favor, (3) Nordo initiated the proceeding without probable cause, (4) Nordo acted maliciously or for a purpose other than bringing Quintana to justice and (5) Quintana suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding. *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (citation omitted).[6]

Quintana believes Nordo is liable for malicious prosecution because when "he could not get Quintana to admit he was the Strangler . . . he had to try to prosecute

---

[6] To prevail on his state law malicious prosecution claim, Quintana need only establish the first four elements of the federal claim. *Kossler v. Crisanti*, 564 F.3d 181, 186 n.2 (3d Cir. 2009); *Kelley v. Gen. Teamsters, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). Because Nordo does not dispute that Quintana suffered a deprivation of liberty, the Court will consider Quintana's state and federal malicious prosecution claims together.

6

[Quintana] as Patterson's perpetrator because it was all he could try." (Pl.'s Resp. 4–5, ECF No. 77.) He argues that the single-photo identification Patterson made to Nordo was unconstitutional because Nordo "convinced Patterson to pick [Quintana] as her assailant," and thus McGoldrick's Affidavit of Probable Cause was "based on an unconstitutionally and procedurally faulty identification."[7] (*Id.* at 5, 9.)

Nordo contends that no reasonable jury could find for Quintana because there is no record evidence that Nordo initiated his criminal proceeding.[8] A police officer, as opposed to a prosecutor, may be liable for malicious prosecution if he or she "fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute." *Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018) (quoting *Finnemen v. SEPTA*, 267 F. Supp. 3d 639 (E.D. Pa. 2017)). A police officer is not liable for malicious prosecution if the prosecutor "engaged in intervening acts that severed the causal nexus tying the [police officer] to the initiation of the prosecution." *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014).

Quintana points to no record evidence, either in his response to Nordo's Motion or at oral argument, upon which a reasonable jury could rely to find that Nordo initiated Quintana's criminal proceeding by omitting material information from a

---

[7]  Quintana moved to suppress Patterson's single-photo identification to Nordo at his criminal trial, and the court denied the motion. *See* (Defs.' SMF Ex. X ("Suppression Hr'g Tr.")).

[8]  Nordo also argues that the record evidence (1) establishes there was probable cause for Quintana's prosecution and (2) does not support a finding that Nordo acted maliciously or for a purpose other than bringing Quintana to justice. *See* (Def.'s Mem. Supp. Mot. Summ. J. 9–22, ECF No. 65.) The Court need not consider these arguments, which address the third and fourth elements of Quintana's malicious prosecution claims, because there is no genuine issue of material fact as to the first element.

7

report, making a false or misleading report, or otherwise interfering with the decision to prosecute Quintana for Patterson's assault. Quintana's theories about Nordo's dishonesty and malicious intent have no evidentiary support in the record. Rather, the record evidence shows that Nordo reported, rather than concealed, the only information he had relating to Quintana's prosecution: he wrote and signed a memorandum stating that Patterson identified Quintana from a single photo, rather than an array.

There is no evidence that Nordo ever communicated with or concealed anything from the prosecutor or in any way interfered with the prosecution's judgment in deciding to prosecute Quintana for the attack on Patterson. There is also no evidence that Nordo communicated with—and thus never had an opportunity to conceal information from—McGoldrick, who prepared the Affidavit of Probable Cause for Quintana's arrest. The record evidence shows that McGoldrick knew about the single-photo identification and still prepared an Affidavit of Probable Cause for Quintana's arrest. Even assuming *arguendo* that McGoldrick should have disclosed the single-photo identification to the ADA,[9] McGoldrick's Affidavit and the ADA's approval severed any conceivable link between Nordo and Quintana's prosecution.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[9] Quintana's counsel conceded, at oral argument, that there is no record evidence upon which a reasonable jury could rely to find McGoldrick liable for malicious prosecution:

> Court: [Is there] a question of fact for the jury as to any of the elements of a malicious prosecution claim as against Detective McGoldrick?
> Counsel: No, Your Honor. . . . I don't believe so, in all candor to the Court.

(Hr'g Tr. 90:22–92:5.)